Argued and submitted November 2, 1992, reassigned June 9, decision of the Court of
Appeals reversed; judgment of the circuit court affirmed July 1, 1993

STATE OF OREGON,
*Petitioner on Review,*

*v.*

WILFREDO RODRIGUEZ,
*Respondent on Review.*

(CC C89-01-30382; CA A62825; SC S39120)

854 P2d 399

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause and filed a response for petitioner on review. Timothy A. Sylwester, Assistant Attorney General, Salem, filed the petition. Also on the petition and response were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for respondent on review. With her on the response to the petition for review was Sally L. Avera, Public Defender, Salem.

GILLETTE, J.

Fadeley, J., specially concurred and filed an opinion.

Unis, J., specially concurred and filed an opinion in which Van Hoomissen, J., joined.

## GILLETTE, J.

In this criminal case, the trial court denied defendant's pretrial motion to suppress evidence seized during a warrantless search of defendant's apartment following his arrest. On appeal from defendant's subsequent conviction, the Court of Appeals reversed and remanded for a new trial, holding that "[d]efendant's consent to the search was obtained by exploitation of illegal police conduct" and that, therefore, the motion to suppress should have been granted. *State v. Rodriguez*, 110 Or App 544, 551, 823 P2d 1026 (1992). We conclude that defendant's consent was not obtained by exploitation of any illegal police conduct. Consequently, we reverse the decision of the Court of Appeals and reinstate the judgment of the circuit court.

Defendant is an alien who had been convicted of possession of a controlled substance. As a result, he was subject to deportation. 8 USC § 1251(11) (1988). A special agent with the United States Immigration and Naturalization Service (INS) learned of defendant's conviction and sought to arrest him pending deportation proceedings.[1] The INS agent obtained an administrative arrest warrant by presenting a certified copy of defendant's record of conviction to the INS Assistant District Director for Investigations in Portland.[2] After obtaining the warrant, the INS agent went to defendant's apartment to make the arrest, accompanied by six Portland police officers and an FBI agent who were members of a regional organized crime narcotics task force.

At the hearing on the motion to suppress, the INS agent described defendant's arrest at his apartment as follows:

"Q [DISTRICT ATTORNEY:] What happened when you got there?

"A [AGENT:] Well, we arrived there and I knocked on the door and [defendant] appeared at the window and opened the door up. I showed him my credentials, speaking Spanish

---

[1] Pending a determination of deportability, an alien "may, upon warrant of the Attorney General, be arrested and taken into custody." 8 USC § 1252(a)(1) (1988).

[2] Federal regulations permit various INS officials, including an Assistant District Director for Investigations, to issue arrest warrants for aliens. 8 CFR § 242.2(c)(iv).

identified myself as an immigration officer, I showed him a copy of the warrant, and told him that I had a warrant for his arrest and that he was under arrest.

"Q  Was that still through the window?

"A  No, he had opened the door. It was in the doorway.

"Q  Okay. And what did you ask him at that point? Did you read him his Miranda rights?

"A  Yes. Yeah, the door was open, as I say. We were more or less — I was by myself. The rest of the unit wasn't there, they were off to the side. And as I told him — identified myself and showed him a copy of the warrant and so forth, and my badge, he said, 'Okay.' He submitted peacefully to the arrest. He says, 'Okay,' and he stepped back in which was an indication to me to step in and I was going to do what I had to for him to be arrested.

"And I stepped in and I read him Miranda rights from DEA form 13A in Spanish. I read his rights. He said he understood them.

"And then I asked him, 'Do you have any drugs or guns in the house?' And he said, 'No, go ahead and look.' And I said, 'Can we search?' You know, 'Want to consent to search,' and so forth. And he said, 'Yes, go ahead.'

"And then the other team members came in and we searched the apartment."

During the search, one of the Portland police officers found a gun under a pillow, and the FBI agent found another gun in a closet. In response to questioning by the INS agent, defendant stated that one of the guns was his and that, although the other gun was not his, it would have his fingerprints on it.

Defendant was charged with two counts of being an ex-convict in possession of a firearm, ORS 166.270 (1987).[3] Before trial, he moved to suppress both the guns and his statements.[4] He argued that the administrative arrest warrant was not supported by oath or affirmation, as required by

---

[3] In 1989, the legislature amended ORS 166.270 to change the name of the crime to "felon in possession of a firearm." Or Laws 1989, ch 839, § 4.

[4] On appeal and review, defendant maintains that the guns should have been suppressed, but he does not mention the statements.

the Oregon and United States Constitutions,[5] that the arrest was therefore unlawful, and that the guns and statements should be suppressed as the "fruit" of the unlawful arrest. Defendant also argued that the Portland police had participated in the arrest in violation of ORS 181.850(1), set out *infra*, and that the evidence should be suppressed as the "fruit" of that alleged illegality. The trial court denied the motion to suppress, and defendant was convicted.

On appeal from that conviction, the Court of Appeals concluded that defendant's arrest was unlawful, because the arrest warrant was not valid under Article I, section 9, of the Oregon Constitution, and because the arrest was not a valid warrantless arrest. *State v. Rodriguez, supra*, 110 Or App at 548-50. The court then concluded that "[d]efendant's consent to the search was obtained by exploitation of illegal police conduct." *Id.* at 551. Consequently, the court reversed and remanded for a new trial. *Id.*[6] We allowed the state's petition for review to address several issues of constitutional import presented by this case.

## SUB-CONSTITUTIONAL ANALYSIS

Before addressing defendant's constitutional claims, we address defendant's sole sub-constitutional argument. *See State v. Lajoie*, 316 Or 63, 66, 849 P2d 479 (1993) (applying this court's customary methodology). Defendant argues that suppression of the gun discovered by the Portland police officer was required, because the Portland police participated in his arrest in violation of ORS 181.850(1). That statute provides:

> "No law enforcement agency of the State of Oregon or any political subdivision of the state shall use agency moneys, equipment or personnel for the purpose of detecting

---

[5] Article I, section 9, of the Oregon Constitution provides, in part, that "no warrant shall issue but upon probable cause, supported by oath, or affirmation." The Fourth Amendment to the Constitution of the United States provides, in part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." The Fourth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 US 643, 81 S Ct 1684, 6 L Ed 2d 1081 (1961).

[6] A dissenting judge would have affirmed on the basis that the trial court properly denied the motion to suppress, because defendant's consent was voluntary, in spite of the unlawful arrest. *See State v. Rodriguez*, 110 Or App 544, 551-53, 823 P2d 1026 (1992) (Rossman, J., dissenting).

or apprehending persons whose only violation of law is that they are persons of foreign citizenship residing in the United States in violation of federal immigration laws."

■     We reject defendant's argument for two reasons. First, the Portland police officers did not violate ORS 181.850(1) by participating in defendant's arrest, because they were not there "for the purpose of detecting or apprehending" defendant. On the contrary, the trial court expressly found that "[t]hey were looking for violations of the state statutes." Nothing in ORS 181.850(1) prohibits state officers whose purpose is to determine whether any state law has been violated from accompanying a federal officer on an arrest such as the one that occurred in this case.

■     Second, even assuming that the Portland police officers were present, at least in part, "for the purpose of * * * apprehending" defendant, and further assuming that being present with such mixed motives would be a violation of ORS 181.850(1), defendant has failed to demonstrate that suppression of evidence is a necessary consequence of such a violation. *See, e.g., State v. Trenary*, 316 Or 172, 850 P2d 356 (1993) (failure of police officer to inform driver of consequences of refusing field sobriety test did not require suppression of test results); *State v. Valentine/Darroch*, 264 Or 54, 504 P2d 84 (1972) (evidence obtained in violation of Oregon "knock and announce" statute not subject to suppression), *cert den* 412 US 948 (1973). Defendant's sub-constitutional argument is not well taken.

## STATE CONSTITUTIONAL ANALYSIS

We proceed to defendant's constitutional arguments. At trial, on appeal, and on review, defendant has invoked his rights under both the Oregon and United States Constitutions. Before addressing defendant's claims under the federal constitution, we address defendant's claims under the state constitution. *Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981). In this case, the applicable provision of the Oregon Constitution is Article I, section 9, which provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and

particularly describing the place to be searched and the person or thing to be seized."

A defendant's right under Article I, section 9, to be "secure * * * against unreasonable search, or seizure" is vindicated through the sanction of suppression of evidence. *State v. Davis*, 313 Or 246, 253, 834 P2d 1008 (1992). As this court stated in *Davis*, "if that constitutional right to be 'secure' against impermissible government conduct is to be effective, it must mean that the government cannot obtain a criminal conviction through the use of evidence obtained in violation of a defendant's rights under that provision." *Ibid.* Therefore, to determine whether defendant was entitled to suppression of the guns in this case, we must determine whether those guns were "obtained in violation" of defendant's right against unreasonable search or seizure under Article I, section 9.

Defendant premised his motion to suppress on the argument that the administrative arrest warrant used to secure his arrest violated Article I, section 9, because it was not "supported by oath or affirmation," as required by that provision. The state has conceded that the arrest warrant did not satisfy the oath or affirmation requirement of Article I, section 9.[7] The state denies, however, that suppression of the guns is required as a result of that concession. The state advances three arguments for sustaining the trial court's decision not to suppress the guns in this case.

■    First, the state argues that, despite the failure of the warrant to comply with Article I, section 9, defendant's arrest was not an "unreasonable" seizure under that provision, because the Oregon Constitution cannot confer a right to be secure against seizure by a federal agent executing a federal warrant that is valid under federal law. Second, the state

---

[7] Initially, the state argued that the certified copy of defendant's record of conviction, which was shown to the INS official who issued the warrant, was sufficient to satisfy the oath or affirmation requirement of Article I, section 9. The state later acknowledged, however, that the record of conviction did not contain any information from which the official who issued the warrant could have determined that defendant was an alien — a fact necessary to establish probable cause for defendant's arrest as a deportable alien. Because of the state's concession, we need not decide here whether a court-certified copy of a conviction record is a sufficient "oath or affirmation" under Article I, section 9, for purposes of establishing the fact of a conviction.

argues that, even if the Oregon Constitution could confer such a right, defendant's arrest was not an "unreasonable" seizure under Article I, section 9, because it was a permissible warrantless arrest based on probable cause. Finally, the state argues that, even if defendant's arrest was an "unreasonable" seizure under Article I, section 9, suppression of the guns was not required, because defendant consented voluntarily to the search that uncovered the guns, and the unlawfulness of the arrest did not invalidate that consent. We shall address each of those arguments in turn.

### *Applicability of the Oregon Constitution*

The state first contends that, because the arresting officer was a federal agent executing a federal warrant that was valid under federal law, defendant's arrest could not have violated any right of defendant under the Oregon Constitution. As the basis for that argument, the state relies on the Supremacy Clause (Article VI, paragraph 2) of the Constitution of the United States, which provides:

> "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

According to the state, the Supremacy Clause prevents the State of Oregon from conferring on any person a right to be secure against such a seizure as occurred in this case.

We will assume, without deciding (at this point), that the administrative warrant for defendant's arrest was valid under federal law.[8] Even with that assumption, however, we reject the state's contention that the Supremacy Clause renders Article I, section 9, inapplicable to the arrest in this case.

---

[8] Defendant has never contended that the arrest warrant was deficient under the applicable federal statutes and regulations. Defendant does contend, however, that the warrant violated the oath or affirmation requirement of the Fourth Amendment to the Constitution of the United States. We discuss that issue *infra*, 317 Or at 42-43. At this point, however, for purposes of addressing the state's Supremacy Clause argument, we simply assume the validity of the warrant under federal law.

In *State v. Davis, supra*, this court recognized the broad protection granted to individuals under Article I, section 9, in relation to criminal prosecutions in this state:

"If the government seeks to rely on evidence in an Oregon criminal prosecution, that evidence must have been obtained in a manner that comports with the protections given to the individual by Article I, section 9, of the Oregon Constitution. It does not matter *where* that evidence was obtained (in-state or out-of-state), or *what* governmental entity (local, state, federal, or out-of-state) obtained it; the constitutionally significant fact is that the Oregon government seeks to use the evidence in an Oregon criminal prosecution. Where that is true, the Oregon constitutional protections apply."

313 Or at 254. It is true that *Davis* itself did not involve conduct by a federal officer acting under the authority of federal law, as does the present case. However, the wording just quoted specifically covers the facts presented here. We see no reason why the factual distinction between a state officer and a federal officer has any legal significance in determining whether certain evidence is admissible in an Oregon criminal prosecution. The rule announced in *Davis* applies to the arrest that occurred in this case.

The Supreme Court of the United States has described the preemptive effect of the Supremacy Clause as follows:

"The Supremacy Clause of Art VI of the Constitution provides Congress with the power to pre-empt state law. Preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, * * * when there is outright or actual conflict between federal and state law, * * * where compliance with both federal and state law is in effect physically impossible, * * * where there is implicit in federal law a barrier to state regulation, * * * where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, * * * or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress."

*Lousiana Public Service Comm. v. FCC*, 476 US 355, 368-69, 106 S Ct 1890, 90 L Ed 2d 369 (1986). According to the Court, "[t]he underlying rationale of the pre-emption doctrine, as stated more than a century and a half ago, is that the

Supremacy Clause invalidates state laws that 'interfere with or are contrary to, the laws of congress.' " *Chicago & N.W. Trans. Co. v. Kalo Brick & Tile*, 450 US 311, 317, 101 S Ct 1124, 67 L Ed 2d 258 (1981) (quoting *Gibbons v. Ogden*, 9 Wheat 1, 211, 6 L Ed 23 (1824)). The Court has stated that it is "reluctant to infer pre-emption." *Building & Trades Council v. Associated Builders*, 507 US ___, ___, 113 S Ct 1190, 1194, 122 L Ed 2d 565 (1993). " 'Consideration of the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law.' " *Ibid.* (quoting *Maryland v. Louisiana*, 451 US 725, 746, 101 S Ct 2114, 68 L Ed 2d 576 (1981)).

Based on those settled preemption principles, we conclude that the case before us does not implicate the Supremacy Clause. The state's theory is that the federal immigration laws control. We disagree. Nothing that we have found in the immigration laws either expressly, or by implication, touches on the issues in the criminal case that is before us. No decision by this court concerning the lawfulness of defendant's arrest under Article I, section 9, of the Oregon Constitution possibly could interfere with or otherwise affect the ability of the federal government to administer or enforce its immigration laws. A decision by this court will not impact federal deportation proceedings against defendant, nor will a decision by this court inhibit the INS from employing the administrative warrant procedure in future cases.[9] If this court concludes that defendant's seizure by a federal officer acting pursuant to a valid federal warrant was "unreasonable" under Article I, section 9, the only possible effect of that decision will be on the admissibility of evidence in an Oregon criminal prosecution. Because this court's interpretation of Article I, section 9, in this context, cannot and will not interfere with the federal government in immigration matters, the Supremacy Clause has no bearing on this case, and this court is not "preempted" from applying Article I, section 9, to defendant's arrest.

---

[9] If, citing Article I, section 9, of the Oregon Constitution, an alien were to seek an injunction against a pending arrest pursuant to an INS warrant, then a preemption issue might well be presented due to the potential interference with the federal government's purposes and objectives. *Cf. In re Neagle*, 135 US 1, 10 S Ct 658, 34 L Ed 55 (1890) (state criminal prosecution against federal marshal for acts committed by marshal in line of duty). However, this is not such a case.

*Reasonableness of the Arrest*

We turn next to the question whether defendant's arrest was an "unreasonable" seizure under Article I, section 9. The state has conceded that the arrest warrant did not comply with Article I, section 9, and that the arrest cannot be justified as a reasonable seizure based on the warrant. *See supra*, 317 Or at 33. The state argues, however, that defendant's arrest was a reasonable seizure, because it was a permissible warrantless arrest based on probable cause.

In response, defendant does not contend that the INS officer lacked probable cause for his arrest. Defendant contends instead that the arrest was unreasonable under the rule stated by this court in *State v. Olson*, 287 Or 157, 598 P2d 670 (1979). In *Olson*, this court held that, under Article I, section 9, "where exigent circumstances which militate against securing [an arrest] warrant do not exist, probable cause to arrest does not justify a forced entry into the home of the suspect." 287 Or at 165. Defendant argues that the *Olson* rule applies here, because the use by the INS agent of an invalid arrest warrant to obtain entry to defendant's apartment was the equivalent of a "forced entry." Defendant also contends that, "under the facts of this case, there is no federal or state authority allowing a warrantless arrest for violation of federal immigration laws."[10]

In this court's view, however, we need not decide whether defendant's arrest violated the rule stated in *State v. Olson, supra,* or whether the arrest was otherwise invalid for lack of statutory authority. Assuming, without deciding, that the arrest was an "unreasonable" seizure under Article I, section 9, we conclude that the guns seized following that arrest were nonetheless admissible in evidence, because defendant consented to the search that uncovered the guns, and that consent was not obtained by exploitation of the unlawful conduct, if any. We turn to a consideration of that point.

---

[10] Under federal statutory law, an INS agent may arrest an alien without a warrant "if he has reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 USC § 1357(a)(2) (1988). Defendant contends that the INS agent in this case "lacked any reason to believe defendant was likely to escape before he could procure a warrant, because he did obtain one."

*Exploitation of Unlawful Police Conduct*

We begin our inquiry by making clear that this case does *not* present the issue whether defendant's consent to the search of his apartment was *voluntary*. Rather, this case presents the issue whether defendant's consent was obtained by exploitation of the purportedly unlawful arrest.[11]

The distinction that we make here between voluntariness and exploitation is an important one. Unlawful police conduct[12] occurring before a search made pursuant to a person's consent may affect the admissibility of evidence seized during that search in two ways. In some cases, the unlawful conduct may bear on the issue of voluntariness. That is, the unlawful conduct may have some effect on the state of mind of the person giving the consent, affecting whether the consent is a voluntary act of that person's free will.[13] Where the unlawful conduct bears on the voluntariness of the consent, as in any other case where voluntariness is at issue, the state must prove by a preponderance of the evidence that the consent was voluntary. *See, e.g., State v. Paulson*, 313 Or 346, 351-52, 833 P2d 1278 (1992) ("Under the consent exception to the warrant requirement, the state

---

[11] In the trial court, when the state raised the issue of defendant's consent to the search, defendant did not argue that his consent was involuntary. Instead, defendant argued only that the evidence seized in the search was the "fruit" of the unlawful arrest. On appeal, defendant has attempted to argue both that his consent was involuntary *and* that the evidence was the "fruit" of the unlawful arrest. We decline to address the voluntariness of defendant's consent, because that issue was not preserved for this court's review. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991) ("Generally, before an appellate court may address whether a trial court committed an error in any of the particulars of the trial of a case, the adversely affected party must have preserved the alleged error in the trial court.").

[12] By "unlawful police conduct," we mean an act by a government entity or its agent that violates a defendant's rights under Article I, section 9, of the Oregon Constitution.

[13] Generally, this result will occur where the circumstances of the unlawful conduct are coercive in nature, without regard to the unlawfulness itself. For instance, suppose that a dozen police officers burst into a person's home in the dead of night, rouse that person from bed and, with guns drawn, seek that person's consent to search the basement of the house. If the person consents, that consent may well be involuntary — *i.e.*, not an act of that person's free will — regardless of whether the police had legal authority to do what they did. A second, less likely scenario would be one in which the officers' acts are not threatening, but the person whose consent is sought knows that the officers' acts nonetheless are illegal. The effect (if any) of knowledge of the illegality on the voluntariness of a consent would be a factual issue for resolution by the trial judge.

must prove by a preponderance of the evidence that someone having the authority to do so voluntarily gave the police consent to search the defendant's person or property."). If the state fails to meet that burden, then the consent is invalid, and the search is treated as "unreasonable" under Article I, section 9. In that event, evidence seized during the search must be suppressed to vindicate the defendant's right to be secure against the unreasonable search.

Where, as here, the question of the voluntariness of the consent has not been raised, or where the court has determined that the consent was voluntary, unlawful police conduct occurring before a consent search still may affect the admissibility of evidence seized during that search. This is so because that unlawful conduct — either an unreasonable search or an unreasonable seizure — occurring before the consent search was a violation of the defendant's rights, even if the consent search by itself was not. Put differently: There may be cases in which suppression of evidence obtained during a consent search may be necessary to vindicate a defendant's rights that were violated by earlier, unlawful police conduct.

Whether suppression is required in any such case will, however, depend on the nature of the connection between the unlawful police conduct and the evidence sought to be suppressed. As we have noted previously, evidence is subject to suppression in a criminal prosecution if it was "*obtained in violation* of a defendant's rights under [Article I, section 9]." *State v. Davis, supra*, 313 Or at 253 (emphasis supplied). Under that standard, there will have to be, at the very least, a causal connection between the unlawful police conduct and the evidence uncovered during the subsequent consent search. Thus, where the evidence would have been obtained even in the absence of the unlawful police conduct — *i.e.*, where there is no causal connection between the unlawful conduct and the discovery of the evidence — the mere fact that the evidence was obtained *after* that conduct will not require suppression.

A causal connection alone, however, still is not sufficient to require suppression. This court has rejected the so-called "but for" test, which would require the suppression of any evidence that would not have been discovered "but for"

the unlawful police conduct. *State v. Quinn*, 290 Or 383, 394-97, 623 P2d 630 (1981); *State v. Kennedy*, 290 Or 493, 500-01, 624 P2d 99 (1981). Thus, the fact that, "but for" the unlawful conduct, the police would not have been in a position to (for example) seek a person's consent does not, in and of itself, render any evidence uncovered during the ensuing consent search inadmissible.

In what circumstances, then, does unlawful police conduct render evidence obtained in a later consent search inadmissible, where the consent to the search is voluntary? We think that evidence obtained during such a search should be suppressed only in those cases where the police have exploited their prior unlawful conduct to obtain that consent. Only where such exploitation occurs can it be said that the evidence discovered subsequently was "obtained in violation" of a defendant's rights under Article I, section 9.

Mere physical presence as a result of prior unlawful conduct does not constitute exploitation of that conduct. Exploitation occurs when the police take advantage of the circumstances of their unlawful conduct to obtain the consent to search. *State v. Williamson*, 307 Or 621, 772 P2d 404 (1989), provides one example of exploitation. There, during the stop of a pick-up at an unlawful roadblock, the police smelled what they believed to be marijuana in the bed of the pick-up. After the defendant had refused to allow a search, the police told the defendant that, unless he consented to a search, they would detain the vehicle until they could obtain a search warrant. The defendant then consented to the search, and the police discovered marijuana. This court held that the marijuana must be suppressed, because the police "were trading on evidence that they had only by virtue of the unlawful roadblock." 307 Or at 626.

Although *Williamson* impliedly was based on a voluntariness analysis,[14] the result in that case may also be

---

[14] The court never stated expressly that the statement by the police that they would detain the defendant's vehicle rendered the defendant's consent "involuntary." However, the tenor of the opinion suggests that it was based on grounds of voluntariness, rather than simply exploitation. For example, the court stated:

"This case again pits the 'voluntariness' of a defendant's incriminating disclosure against the judicial assessment of acts leading to that disclosure, and it again shows that while the events and their psychic effects may be questions of

explained as based on an exploitation analysis. In *Williamson*, the police were able to obtain the defendant's consent to the search of his vehicle only by taking advantage of the unlawful roadblock and by telling the defendant that they would detain his vehicle. Thus, the police exploited their unlawful conduct, which was the roadblock. Even if the defendant's consent were voluntary in light of all the circumstances, the police's exploitation of their unlawful conduct to obtain that consent would have required suppression of the evidence discovered during the consent search.

■      The present case, however, is a far cry from *Williamson*. Here, immediately after the purportedly unlawful arrest, the agent asked defendant if he had any drugs or guns in his apartment.[15] Defendant said, "No, go ahead and look." The agent then confirmed that defendant was giving his consent to a search of the apartment, and defendant said, "Yes, go ahead." Given those facts, it is apparent that the INS agent did not trade on or otherwise take advantage of the arrest to obtain defendant's consent to the search. Indeed, there is absolutely nothing in the encounter between the agent and defendant that can be construed as exploitation of the purportedly unlawful arrest. The mere fact that, but for the arrest, the agent would not have been standing in the doorway of defendant's apartment, in a position to ask defendant about drugs and guns, does not render the evidence discovered in the subsequent consent search inadmissible. *See supra*, 317 Or at 39-40.

Because, under the facts of this case, the police did not exploit any unlawful conduct to obtain defendant's consent to the search of his apartment, the guns discovered

---

fact, the legal effect of the 'voluntary' disclosure remains a legal, not a factual, judgment."

*State v. Williamson*, 307 Or 621, 625, 772 P2d 404 (1989).

[15] The majority in the Court of Appeals concluded that this question was "unwarranted," because defendant was "cooperative" and the agent "expressed no articulable concern for his safety." *State v. Rodriquez, supra,* 110 Or App at 551. That may be true; however, the question itself was not unlawful. Defendant had been read his *Miranda* rights and stated that he understood them. He was under no compulsion to answer the agent's question.

during that search were not "obtained in violation" of defendant's rights under Article I, section 9, of the Oregon Constitution. Therefore, the guns were not subject to suppression on the grounds argued by defendant. The Court of Appeals erred in concluding otherwise.

## FEDERAL CONSTITUTIONAL ANALYSIS

Defendant argues that the administrative arrest warrant used to secure his arrest violated the Fourth Amendment to the Constitution of the United States, because it was not "supported by oath or affirmation." Defendant contends that, therefore, his arrest was invalid and that the guns must be suppressed as the "fruit" of the invalid arrest. For the reasons that follow, we disagree.

The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Although the Supreme Court of the United States never has ruled on the validity of the administrative arrest warrants used to detain deportable aliens, the Court has suggested its approval of those warrants on at least one occasion. In *Abel v. United States*, 362 US 217, 80 S Ct 683, 4 L Ed 2d 668 (1960), the defendant moved to suppress evidence obtained during a warrantless search made in connection with the defendant's arrest pursuant to an administrative warrant of the type at issue here. The Court declined to decide whether such warrants satisfy the oath or affirmation requirement of the Fourth Amendment, because the defendant had not raised the issue below. In explaining its decision not to rule on the question, however, the Court stated:

"Statutes authorizing administrative arrest to achieve deportation proceedings have the sanction of time. It would emphasize the disregard for the presumptive respect the Court owes to the validity of Acts of Congress, especially when confirmed by uncontested historical legitimacy, to bring into question for the first time such a long-sanctioned practice of government at the behest of a party who not only

did not challenge the exercise of authority below, but expressly acknowledged its validity.

"* * * * *

"Statutes providing for deportation have ordinarily authorized the arrest of deportable aliens by order of an executive official. The first of these was in 1798. * * * To be sure, some of these statutes * * * dealt only with aliens who had landed illegally in the United States, and not with aliens sought to be deported by reason of some act or failure to act since entering. Even apart from these, there remains overwhelming historical legislative recognition of the propriety of administrative arrest for deportable aliens such as petitioner."

362 US at 230, 233.

The Supreme Court has not had occasion to revisit the question that it declined to answer in *Abel*. However, at least one federal court has held, in reliance on *Abel*, that INS administrative warrants do not violate the oath or affirmation requirement of the Fourth Amendment. *See Spinella v. Esperdy*, 188 F Supp 535 (SD NY 1960) (so holding). Moreover, the Supreme Court has made clear that "[a] deportation proceeding is a purely civil action" and that, as a result, "various protections that apply in the context of a criminal trial do not apply in a deportation hearing." *INS v. Lopez-Mendoza*, 468 US 1032, 1038, 104 S Ct 3479, 82 L Ed 2d 778 (1984).

■ In the light of *Abel* and the unquestioned recognition by the Supreme Court that aliens subject to deportation proceedings do not enjoy the full panoply of constitutional protections accorded to persons subject to criminal prosecution, we conclude that the administrative arrest warrant issued to procure defendant's arrest as a deportable alien in this case did not violate the Fourth Amendment. Consequently, defendant's arrest was not "unreasonable" under that constitutional provision.

■ Only one possible question remains under the federal constitution. Defendant has argued that his consent to the search of his apartment was subject to suppression as the "fruit" of his purportedly unlawful arrest. We have concluded that defendant's arrest was not unlawful under the Fourth Amendment; however, we have assumed, for the sake

of our analysis of state constitutional law, that defendant's arrest *was* unlawful under Article I, section 9, of the Oregon Constitution. Given that assumption, the question remaining is this: In determining whether an item of evidence is subject to suppression under the Fourth Amendment as the "fruit" of a prior illegality,[16] is an arrest that violates a state constitutional provision but not the Fourth Amendment itself treated as a "prior illegality" for purposes of that analysis? For the following reason, we conclude that the answer to that question is "no."

In *California v. Greenwood*, 486 US 35, 108 S Ct 1625, 100 L Ed 2d 30 (1988), the Supreme Court held that the Fourth Amendment does not grant a right to be secure against the warrantless search and seizure of garbage left outside the curtilage of a home. The defendant in that case pointed out to the Court that the California Constitution does grant such a right; however, the California Constitution does not permit the suppression of evidence as a means of enforcing that right. The defendant, therefore, argued that the Fourth Amendment itself should vindicate the defendant's state constitutional right. The Court rejected that argument, writing as follows:

> "Individual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution. We have never intimated, however, that whether or not a search is reasonable within the meaning of the Fourth Amendment depends on the law of the particular State in which the search occurs. * * * Respondent's argument is no less than a suggestion that concepts of privacy under the laws of each State are to determine the reach of the Fourth Amendment. We do not accept this submission."

486 US at 43-44.

■ *Greenwood* stands for the proposition that the Fourth Amendment does not exist to vindicate violations of state constitutional law. Evidence is not subject to suppression under the Fourth Amendment unless a violation of that provision has occurred. Because the arrest in this case did not

---

[16] For a discussion of the "fruit of the poisonous tree" doctrine under the Fourth Amendment to the Constitution of the United States, see *Wong Sun v. United States*, 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963).

violate the Fourth Amendment, the guns discovered in the subsequent consent search were not subject to suppression under the Fourth Amendment, even if the arrest violated Article I, section 9, of the Oregon Constitution (a question that we have not resolved in this case).

## CONCLUSION

The guns seized during the search of defendant's apartment were not subject to suppression under statutory law, the Oregon Constitution, or the Constitution of the United States. The Court of Appeals erred in concluding to the contrary.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

**FADELEY, J.,** specially concurring.

The trial court denied suppression. I agree with that result and concur in it on the ground that the evidence was obtained by informed and voluntary consent of defendant.

In defendant's brief to the Court of Appeals, defendant's only arguments were two. The brief reported:

"Defendant asserted the arrest warrant was invalid under our state and federal constitutions because it was unsupported by oath or affirmation and also asserted the search by state officers was invalid because it was barred by a statute proscribing state officer assistance in enforcement of federal immigration laws."[1]

Those two points are the only ones argued with vigor and preserved on the record. No foundation was laid for considering the exploitation question or for making the supremacy question pivotal. Federal power to issue an administrative warrant was acknowledged.

A common-law court should not decide issues that are neither presented nor *advocated* strongly by an appellant.

---

[1] ORS 181.850(1) provides:

"No law enforcement agency of the State of Oregon or of any political subdivision of the state shall use agency moneys, equipment or personnel for the purpose of detecting or apprehending persons whose only violation of law is that they are persons of foreign citizenship residing in the United States in violation of federal immigration laws."

The reason is to limit a decision to the issue actually contested between the parties, *i.e.*, where that contest is a product of a more informed and complete advocacy. Otherwise the court may simply be delivering a lecture or erecting a hypothetical case and commenting on it in the manner of the medieval scholastics.

The trial court, while hearing defendant's motion to suppress evidence, also heard the state concede that the state police officers who participated in the search had no authority to do so and also were "statutorily prohibited by ORS [*sic*] from helping the INS [federal Immigration and Naturalization Service] people." The state argued that the court-created remedy of suppression of evidence was not an appropriate one to apply to the conceded violation. The trial court agreed.

The state also relied on defendant's consent for the search. Speaking about the FBI agent and the five state police officers who tagged along with the immigration service officer, the state said:

"[E]ven if the court would consider that there's something improper about these procedures, the defendant consented to having his house searched."

Again the trial court agreed, finding:

"The answer was, 'no, go ahead and search;' what appears to me to be a consensual search."

The trial court referred to the FBI agent's finding a pistol based on the "consent search." Concerning one local police officer and a pistol that he found, the trial court said that finding a pistol during the consent search was not a violation of the prohibitory statute, ORS 181.850. In other words, the court found that the statute did not deprive the state officers of authority to participate in a consent search looking for evidence of violations, not related to federal immigration, because ORS 181.850 is triggered only when state officers enforce federal immigration laws as the "only violation of law."

Defendant's arguments, quoted at the beginning of this separate opinion, do not depend on contentions about the police exploiting a search or seizure that is claimed to be illegal because it was made without a valid warrant. Neither do these contentions depend on the federal Supremacy

Clause. Accordingly, I would heed the advice of Justice Sandra Day O'Connor, offered in a recent case before the Supreme Court of the United States, that:

> "When courts take it upon themselves to issue helpful guidance in dictum, they risk creating additional confusion by inadvertently suggesting constitutional absolutes that do not exist. The Court's dictum today follows that course." *Harper v. Virginia Department of Taxation*, ____ US ____, 113 S Ct 2510, ____ L Ed 2d ____ (1993) (O'Connor, J., dissenting).

**UNIS, J.,** specially concurring.

The issue in this case is whether a motion to suppress evidence seized during a warrantless search of defendant's apartment was properly denied by the trial court. I agree with the court that it was. I do not agree with the court's method of analysis or its reasoning. I, therefore, write separately to express what I believe is the proper analysis.

In order to determine whether evidence seized during a warrantless search of defendant's apartment was properly suppressed, a number of questions leading up to the seizure of the evidence must be considered sequentially, first considering state law where applicable. The questions must be answered sequentially, because the answer to each question may affect the analysis under the remaining questions.

(1)   Was the Immigration and Naturalization Service (INS) agent's initial encounter with defendant valid?

(2)   Was defendant's arrest by the INS agent valid when it was based on an INS warrant that was not supported by oath or affidavit?

(3)   Was defendant's consent to a search of his apartment valid?

(4)   Was the resulting warrantless search legal?

(5)   Should the evidence obtained as a result of the warrantless search be suppressed?

In contrast to the court's tangled approach,[1] my sequential approach squarely addresses all of the search and

---

[1] *See* note 17, *post.*

seizure issues raised by the parties in this case and does so in a way that is internally consistent and true to existing precedents and authorities. The following opinion, which I prepared for the court when the case was initially assigned to me, reflects that approach. It is published in its entirety, with modifications, as a specially concurring opinion.[2]

The relevant facts are not disputed. Defendant, an alien, was subject to deportation, because he had been convicted of possession of a controlled substance. A federal INS agent obtained an administrative warrant for defendant's arrest by presenting a certified copy of the judgment of defendant's conviction to an INS assistant district director, a proper federal official.[3] The INS agent informed members of a regional organized crime narcotics task force that he intended to arrest defendant on the deportation warrant at defendant's apartment. Seven members of the task force, including six Portland police officers and an FBI agent, accompanied the INS agent to defendant's apartment.

While the task force members were "off to the side" and apparently out of sight, the INS agent knocked on defendant's door. When defendant opened the door, the agent, speaking in Spanish, identified himself, showed defendant the arrest warrant, and told defendant that he was under arrest. Defendant said, "Okay," and stepped back, which the agent interpreted as an invitation to enter the apartment. The agent stepped inside the apartment, read defendant the *Miranda* warnings in Spanish, and asked defendant whether he understood his rights. Defendant stated that he understood his rights.

The INS agent then asked defendant, "Do you have any drugs or guns in the house?" Defendant answered, "No, go ahead and look." The agent then asked, "Can we search?"

---

[2] Some material in the text of this opinion and footnotes 10, 13, 15, and 17 were added to comment on or respond to the court's opinion.

[3] 8 USC § 1251(a) currently provides in part:

"Any alien * * * shall, upon the order of the Attorney General, be deported if the alien is within one or more of the following classes of deportable aliens:

"* * * * *

"(2)(B)(i) * * * has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State [or] the United States * * * relating to a controlled substance * * *."

Defendant answered, "Yes, go ahead." The seven members of the task force then entered defendant's apartment, and they and the INS agent searched the apartment. The FBI agent found one 9 mm pistol under defendant's pillow, and a Portland police officer found a .25 caliber pistol in the closet. In response to questioning, defendant stated that the 9 mm pistol belonged to him and that, although the .25 caliber pistol was not his, it had his fingerprints on it.

Defendant was charged with two counts of being a felon in possession of a firearm, ORS 166.270. Before trial, defendant moved to suppress evidence of the pistols that were seized during the search of his apartment.[4] Defendant argued that the federal administrative arrest warrant was invalid under Article I, section 9, of the Oregon Constitution[5] and under the Fourth Amendment to the federal constitution[6] "because it was unsupported by oath or affirmation"; that the search of his apartment was conducted without a search warrant or a valid consent; and that evidence of the pistol found by the Portland police officer should be suppressed, because "ORS 181.850 forbids local law enforcement personnel from participating in the arrest of a person whose only violation of law is that [he is] residing in the United States in violation of federal immigration laws."

The trial court denied defendant's motion to suppress, holding that even if the administrative arrest warrant was defective, the search was lawful because it was conducted pursuant to a valid consent. From his conviction on two counts of being a felon in possession of a firearm, defendant appealed. The Court of Appeals reversed and remanded for a new trial, holding that defendant's arrest was unlawful because the administrative arrest warrant, issued without a "supporting oath or affirmation," was invalid under Article I,

---

[4] Defendant also moved to suppress his statements. On appeal, however, defendant did not make separate arguments to challenge the admission of his statements.

[5] Article I, section 9, of the Oregon Constitution is quoted *post* at 56.

[6] The Fourth Amendment to the Constitution of the United States provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

section 9, of the Oregon Constitution, and that, therefore, defendant's arrest under authority of that warrant was invalid. *State v. Rodriguez*, 110 Or App 544, 549-50, 823 P2d 1026 (1992). That court also held that "[d]efendant's consent to the search was obtained by exploitation of illegal police conduct" and, therefore, was invalid. *Id.* at 551.

We allowed the state's petition for review to decide whether defendant's motion to suppress the pistols seized during a warrantless search of defendant's apartment was properly denied by the trial court. I will examine the sequence of events leading up to the discovery of the pistols in the warrantless search, first considering issues of state law where applicable. *See Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981) ("[t]he proper sequence is to analyze the state's law, including its constitutional law, before reaching a federal constitutional claim"); *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (stating methodology).

## I. VALIDITY OF INITIAL ENCOUNTER

I first consider whether the INS agent acted lawfully in approaching defendant's door and knocking. That is, I first must determine whether the INS agent's conduct is either non-coercive, requiring no justification, *State v. Holmes*, 311 Or 400, 407, 813 P2d 28 (1991); *State v. Warner*, 284 Or 147, 161, 585 P2d 681 (1978), or is with proper authorization by a politically accountable lawmaker, *State v. Holmes, supra*, 311 Or at 404. A police-citizen encounter without any restraint of liberty (*e.g.*, mere conversation, non-coercive) requires neither authorization from a politically accountable lawmaker nor justification and does not implicate either ORS 131.605 to ORS 131.625 (relating to stopping of persons) or Article I, section 9, of the Oregon Constitution. *State v. Holmes, supra*, 311 Or at 407.

In this case, the INS agent's first encounter with defendant was without any restraint of defendant's liberty and, therefore, required neither authorization from a politically accountable lawmaker nor justification. The agent simply approached the door to defendant's apartment and knocked. There were no signs warning strangers to stay away. In approaching defendant's door and knocking, the agent conducted himself in a manner that would be perceived

as nonoffensive if such conduct were committed by an ordinary citizen. *See State v. Holmes, supra,* 311 Or at 407, 409-10 (defining "seizure" of a person under Article I, section 9, of the Oregon Constitution; stating that "the pivotal factor" is whether the officer behaved in a way that would be perceived as nonoffensive if the same encounter had taken place between two ordinary people). Defendant acknowledges that "[a] police officer can knock on a citizen's door; he simply cannot use his authority to obtain entry once the citizen responds to the knock unless he actually has that authority." *See State v. Rhodes,* 315 Or 191, 199, 843 P2d 927 (1992) (police officer has the right to stop and walk over to a pickup that was parked oddly on the street late at night); *State v. Anfield,* 313 Or 554, 563, 836 P2d 1337 (1992) (Unis, J., concurring) ("police officers do not need authorization from a politically accountable lawmaker to stop at the scene of a motor vehicle accident on a public highway or in a public place"). When defendant heard the knock on the door, he was free to ignore it and to maintain his protected privacy interest. Instead, defendant chose to open the door to public view and stand in view of the officer. *See State v. Louis,* 296 Or 57, 61, 672 P2d 708 (1983) ("a person's conduct within private premises may be such as to sacrifice the 'expectation of privacy' "). Under the state constitution, the agent needed no authorization from a politically accountable lawmaker or justification for this non-coercive encounter.

Because the INS agent's initial encounter with defendant at the door was non-coercive and did not intrude on defendant's reasonable expectation of privacy, there also was no Fourth Amendment seizure of defendant's person at that time. *See Katz v. United States,* 389 US 347, 351, 88 S Ct 507, 19 L Ed 2d 576 (1967) ("[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection"); *United States v. Santana,* 427 US 38, 42, 96 S Ct 2406, 49 L Ed 2d 300 (1976) (person standing in threshold of home did not have any expectation of privacy and, for purposes of the Fourth Amendment, was standing in a public place); *United States v. Watson,* 423 US 411, 423-24, 96 S Ct 820, 46 L Ed 2d 598 (1976) (warrantless arrest in a public place on probable cause did not violate the Fourth Amendment); *United States v. Mason,* 661 F2d 45, 46-47 (5th Cir 1981) (defendant had no protectible expectation of privacy when he

answered the door of his home, and warrantless arrest of defendant when he came to the front door of the house where he was living did not violate Fourth Amendment); *California v. Hodari D.*, 499 US 621, 111 S Ct 1547, 1549-52, 113 L Ed 2d 690 (1991) (no seizure occurs for purposes of Fourth Amendment when a law enforcement official seeks to apprehend a person through a show of authority, but applies no physical force, and the person does not submit).[7]

## II. VALIDITY OF ARREST

Once defendant answered the INS agent's knock at his door and was in the agent's view, the arrest was accomplished peacefully and without entry. The arrest was a "seizure" of defendant's person. If Article I, section 9, of the Oregon Constitution is applicable to the arrest ("seizure") of defendant's person, it would require authorization from a politically accountable lawmaker in order to satisfy Article I, section 9, of the Oregon Constitution. *State v. Holmes, supra,* 311 Or at 407.[8]

The Immigration and Nationality Act (INA), 8 USC §§ 1101-1557, and the regulations pursuant to that act authorize the arrest of deportable aliens. 8 USC § 1252(a)(1) provides in part:

"Pending a determination of deportability in the case of any alien * * *, such alien may, upon warrant of the Attorney General, be arrested and taken into custody."

---

[7] *See also* United States Supreme Court cases discussed in *State v. Holmes*, 311 Or 400, 412-13, 813 P2d 28 (1991); *Florida v. Bostick*, 501 US ____, 111 S Ct 2382, 2389, 115 L Ed 2d 389 (1991) (police officers' conduct in boarding stopped passenger buses and approaching seated passengers to ask them questions and to request consent to search their luggage does not constitute a Fourth Amendment seizure of the person in every instance, but instead must be evaluated in each case to determine whether, under all the circumstances surrounding the encounter, a reasonable person would have felt free to decline the officers' requests or otherwise terminate the encounter); *United States v. Mendenhall*, 446 US 544, 554, 100 S Ct 1870, 64 L Ed 2d 497 (1980) (a person is seized under the Fourth Amendment *only if*, under all of the circumstances, a reasonable person would have believed that he was not free to leave); 2 LaFave, Search and Seizure: A Treatise on the Fourth Amendment 587-95, § 6.1(e) (2d ed 1987) (discussing validity of arrest at defendant's door); Annot., *What Constitutes "Seizure" Within Meaning of Federal Constitution's Fourth Amendment — Supreme Court Cases*, 100 L Ed 2d 981 (1990).

[8] The examples of politically accountable lawmakers in *State v. Holmes, supra,* 311 Or at 404 n 4, list only local and state sources as illustrative of the sources of proper authorization. Where the authorization is from a federal source, however, a different analysis is necessary. *See post* at 53-57 (discussing Supremacy Clause).

In this case, a warrant issued, and there is no claim that the warrant did not satisfy federal statutory requirements. The INS agent, therefore, had authorization from a politically accountable lawmaker[9] to arrest defendant pursuant to the warrant.

Defendant argues that the federal administrative arrest warrant is invalid under Article I, section 9, of the Oregon Constitution because it was not supported by an "oath or affirmation." The state concedes that "[b]ecause there is no evidence in the record of an oath, affirmation or certification of defendant's status as a[n] alien," the INS warrant "does not comply, and cannot comply, with the terms of Article I, section 9." *See State v. Noble*, 314 Or 624, 632, 842 P2d 780 (1992) (the oath or affirmation clause of Article I, section 9, requires that the issuing magistrate "determine that there exists probable cause supported by a sworn statement. A perusal of court records by the issuing magistrate is not a valid substitute for the statement supported by oath or affirmation). Therefore, I assume that the warrant does not satisfy the requirements of Article I, section 9, of the Oregon Constitution.

However, the INS agent was acting pursuant to a federal statute that affirmatively authorized the warrant. If that warrant was valid under federal law, it cannot be invalidated by state statutory or constitutional law because of the Supremacy Clause of the Constitution of the United States.[10]

---

[9] 8 USC § 1357(a)(2) authorizes an INS agent to make a warrantless arrest of an alien on probable cause to believe that the alien is in the United States in violation of the immigration laws and "is likely to escape before a warrant can be obtained for his arrest." There was no showing in this case that defendant was likely to escape before a warrant could be obtained, and the INS officer did in fact obtain a warrant. The INS officer cannot create the likelihood of escape by announcing his presence at defendant's apartment. A warrantless arrest was not justified because the circumstances required by statute for a warrantless arrest were not established.

ORS 133.245 provides authority for federal officers to arrest persons, but "federal officer" is defined in ORS 133.005(2) as "an officer of the United States Customs Service who is authorized under ORS 133.245 to make arrests."

[10] The court is generous when it asserts that the state argues that the Supremacy Clause, Article VI, paragraph 2, of the Constitution of the United States renders Article I, section 9, inapplicable to defendant's arrest. The state neither cited nor discussed the Supremacy Clause in its briefs to this court. During oral argument in this court, the state's lawyer, in response to questions from this court, did, however, briefly refer to the Supremacy Clause. Nevertheless, we must consider the implications of the Supremacy Clause in order to properly analyze the arguments and issues in this case.

Article VI of the Constitution of the United States provides in part:

> "This Constitution, and *the Laws of the United States* which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, *shall be the supreme Law of the Land*; and the Judges in every State shall be bound thereby, *any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.*" (Emphasis added.)

Nearly two centuries ago, the United States Supreme Court stated:

> "If any one proposition could command the universal assent of mankind, we might expect it would be this — that the government of the Union, though limited in its powers, is supreme within its sphere of action. This would seem to result, necessarily, from its nature. It is the government of all; its powers are delegated by all; it represents all, and acts for all. Though any one state may be willing to control its operations, no state is willing to allow others to control them. The nation, on those subjects on which it can act, must necessarily bind its component parts. But this question is not left to mere reason: the people have, in express terms, decided it, by saying, 'this constitution, and the laws of the United States, which shall be made in pursuance thereof,' 'shall be the supreme law of the land,' and by requiring that the members of the state legislatures, and the officers of the executive and judicial departments of the states, shall take the oath of fidelity to it. The government of the United States, then, though limited in its powers, is supreme; and its laws, when made in pursuance of the constitution, form the supreme law of the land, 'anything in the constitution or laws of any state to the contrary notwithstanding.' " *McCulloch v. Maryland*, 17 US 315, 404, 4 Wheat 316, 4 L Ed 579 (1819).

Decisions of this court recognize that our state constitution can provide greater protections than does the federal constitution. *See, e.g., State v. Kennedy, supra*, 295 Or at 270-71 (state constitution may provide more, less, or the same protection as guaranteed under the federal counterpart). That is true where federal statutory or constitutional law establishes protections, which state law is free to exceed with greater protections. However, where the federal constitution, or federal statutory law enacted pursuant to the

federal constitution, affirmatively establishes certain conduct as acceptable, that federal grant of authority is controlling over state statutory or state constitutional provisions (*e.g.*, here, in determining the validity of the federal statute and the warrant that it authorized).

Article I, section 8, of the Constitution of the United States gives Congress the power "[t]o establish a uniform Rule of Naturalization." Further, certain powers to exclude aliens are considered "inherent in sovereignty," *Fong Yue Ting v. United States*, 149 US 698, 705, 13 S Ct 1016, 37 L Ed 905 (1893) (quoting *Nishimura Ediu v. United States*, 142 US 651, 659, 12 S Ct 336, 35 L Ed 1146 (1892)),[11] so that " '[t]he power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by [the Supreme Court's] previous adjudications.' " *Kleindienst v. Mandel*, 408 US 753, 766, 92 S Ct 2576, 33 L Ed 2d 683 (1972) (quoting *Lem Moon Sing v. United States*, 158 US 538, 547, 15 S Ct 967, 39 L Ed 1082 (1895)).

Congress has enacted and amended the INA, which, among its provisions, grants to an INS officer the authority to make an arrest of the kind at issue in this case. Unless that grant of authority violates the federal constitution (*e.g.*, the Fourth Amendment, discussed *ante*), there is no claim that the applicable provisions of the INA were beyond the authority of Congress to enact or violated applicable standards of international law. The applicable provisions of the INA, therefore, have supremacy over the laws and protections of the Oregon Constitution (here, specifically, over the limitations on the issuance of warrants in Article I, section 9), and Article I, section 9, of the Oregon Constitution is not applicable in evaluating a valid federal law, the warrant it authorized, or the actions of an INS officer in arresting defendant pursuant to that warrant.

---

[11] *See also The Chinese Exclusion Case*, 130 US 581, 609, 9 S Ct 623, 32 L Ed 1068 (1889) (same).

This court recently stated:

"If the government seeks to rely on evidence in an Oregon criminal prosecution, that evidence must have been obtained in a manner that comports with the protections given to the individual by Article I, section 9, of the Oregon Constitution. It does not matter *where* that evidence was obtained (in-state or out-of-state), or *what* governmental entity (local, state, federal, or out-of-state) obtained it; the constitutionally significant fact is that the Oregon government seeks to use the evidence in an Oregon criminal prosecution. Where that is true, the Oregon constitutional protections apply." *State v. Davis*, 313 Or 246, 254, 834 P2d 1008 (1992) (emphasis in original).

*State v. Davis* described the admissibility of evidence obtained as the result of a violation of Article I, section 9, where that violation (*i.e.*, a law or a warrant that does not satisfy Article I, section 9) is the predicate for the rule. A significant factor not implicated in *State v. Davis*, however, is the source of the authority under which the officer acts. Here the source of authority for the arrest was an INS warrant authorized by federal law.

Article I, section 9, does proscribe certain "laws"[12] and "warrants":

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The issue at this point in the analysis is simply whether there has been a law or a warrant that violates Article I, section 9; if not, the predicate (a violation of Article I, section 9) for the evidentiary rule of *State v. Davis, supra*, does not exist.[13]

---

[12] "Laws" include not only legislation, but also governmental conduct generally. *State v. Davis*, 313 Or 246, 253, 834 P2d 1008 (1992).

[13] Although I agree with the court and with this court's statement in *State v. Davis, supra*, that state law determines the admissibility of evidence in state courts, I disagree with the court's claim in this case that the rule affects the analysis of the validity of an arrest in the face of a federal statute authorizing the arrest. Article I, section 9, could state that "evidence obtained pursuant to consent which is obtained after an arrest may not be used in state court if the arrest was based on a federal warrant that *would* violate Article I, section 9, of the Oregon Constitution *but for* the supremacy of federal law that affirmatively establishes the validity of the warrant."

Because the law involved in this case is a federal statute that affirmatively authorized the warrant in question, however, the Supremacy Clause of the federal constitution means that Article I, section 9, cannot invalidate the law or the warrant it authorized, assuming that the federal statute was followed (*i.e.*, that the federal officers did nothing beyond the scope of their authority as authorized by federal statute) and that the statute and warrant satisfy the federal constitution, which I consider next.

Assuming that defendant, an alien, has a claim to protection under the Fourth Amendment,[14] he was seized within the meaning of the Fourth Amendment when the INS agent placed him under arrest. *See California v. Hodari D., supra,* 111 S Ct at 1550-51 (defining seizure within the context of the Fourth Amendment) and other Supreme Court cases discussed *ante* at 51-52. The INS agent had a warrant and had statutory authority to arrest defendant with the warrant pursuant to 8 USC § 1252. Under the federal analysis, I believe that the United States Supreme Court would hold that the INS warrant, based on a court-certified copy of a

---

If that were how state statutes or the state constitution read, it would be true that, notwithstanding the validity of the warrant authorized by federal statute, there would be evidentiary limitations on the admissibility of evidence based on whether the warrant otherwise satisfied Article I, section 9, of the Oregon Constitution. (Oregon statutory law, in fact, does establish limitations on the admissibility of evidence; those limitations on admissibility do not violate the Supremacy Clause even when applied to evidence validly obtained pursuant to federal authority.) Article I, section 9, however, determines the validity of laws ("[n]o law shall * * *") and warrants ("no warrant shall issue but * * *") and does not establish an evidentiary standard apart from the validity of laws and warrants. It is true that a law or a warrant that violates Article I, section 9, can ultimately result in a suppression of evidence, but the threshold inquiry is whether a "law" or a "warrant" violated Article I, section 9.

Footnote 9 of the court's opinion, 317 Or at 36, helps demonstrate my point. The court in this case is not finding that an evidentiary rule exists such as I have posited could, but does not, exist. Rather, the court is assuming that the arrest itself was unlawful under Article I, section 9, and that such a holding is valid even where there is a valid federal statute authorizing the arrest. Thus, the court is already creating the conflict that it alludes to in footnote 9.

[14] In *INS v. Lopez-Mendoza,* 468 US 1032, 104 S Ct 3479, 82 L Ed 2d 778 (1984), a majority of the Supreme Court assumed, but did not expressly address, the question whether the Fourth Amendment applies to illegal aliens in the United States. *See United States v. Verdugo-Urquidez,* 494 US 259, 265, 110 S Ct 1056, 108 L Ed 2d 222 (1990) (commenting on that assumption); Auchincloss-Lorr, *Police Encounters of the Third Kind: The Role of Immigration Law and Policy in Pre-Seizure Interrogation Strategies,* 20 Search and Seizure Law Report 105, 106 (1993).

judgment against defendant, satisfies the requirements of the Fourth Amendment. *See McGrain v. Daugherty*, 273 US 135, 156-58, 47 S Ct 319, 71 L Ed 580 (1926) (warrant issued by committee of Congress upheld even though not based on a separate oath or affirmation apart from oath of office).

The United States Supreme Court has not ruled directly on the validity of an INS warrant based on something less than an oath or affirmation required by the Fourth Amendment for a judicial warrant. However, the Supreme Court has recognized that the administrative warrant procedure is a long-standing one. In *Abel v. United States*, 362 US 217, 233, 80 S Ct 683, 4 L Ed 2d 668 (1959), the Supreme Court stated:

> "Statutes providing for deportation have ordinarily authorized the arrest of deportable aliens by order of an executive official. The first of these was in 1798. Act of June 25, 1798, c. 58, §2, 1 Stat. 571. And see, since that time, and before the present Act, [seven intervening Acts]. To be sure, some of these statutes, namely the Acts of 1888, 1903 and 1907, dealt only with aliens who had landed illegally in the United States, and not with aliens sought to be deported by reason of some act or failure to act since entering. Even apart from these, there remains overwhelming historical legislative recognition of the propriety of administrative arrest for deportable aliens such as petitioner."

In *United States v. Watson, supra*, 423 US at 416-24, the Supreme Court considered the long history and acceptance of warrantless public arrests on probable cause without exigent circumstances, concluding that, in deference to this long history, the Court would not transform a judicial preference for warrants issued by a magistrate into a constitutional rule:

> "[W]e decline to transform this judicial preference into a constitutional rule when the judgment of the Nation and Congress has for so long been to authorize warrantless public arrests on probable cause rather than to encumber criminal prosecutions with endless litigation with respect to the existence of exigent circumstances, whether it was practicable to get a warrant, whether the suspect was about to flee, and the like." *Id.* at 423-24.

Indeed, in *Abel v. United States, supra*, 362 US at 230, the Court cited as its reasons for not addressing the question of

the validity of an INS warrant where the issue was expressly disavowed below that "[s]tatutes authorizing administrative arrest to achieve detention pending deportation proceedings have the sanction of time" and that the Court owes "presumptive respect * * * to the validity of Acts of Congress, especially when confirmed by uncontested historical legitimacy."

Based on the belief that the United States Supreme Court would hold that an administrative warrant that satisfies the requirements of 8 USC § 1252 does not violate the requirements of the Fourth Amendment, the arrest warrant and the arrest made pursuant to it in this case did not violate the Fourth Amendment. The initial state law assumption of the invalidity of the "warrant" under Article I, section 9, *ante* at 53, therefore, is superseded because the warrant and the arrest were made by an INS agent pursuant to a valid affirmative grant of federal authority. *See* note 17, *post.* The INS warrant and, therefore, the arrest made based on the authority of the warrant, were valid, and the INS agent legally arrested defendant.

## III. VALIDITY OF CONSENT TO SEARCH

The search in this case was not conducted pursuant to a search warrant. Although a search is generally deemed unreasonable unless it is conducted pursuant to a valid search warrant, an exception exists for valid consent searches under Article I, section 9, of the Oregon Constitution, *State v. Pogue,* 243 Or 163, 164, 412 P2d 28 (1966), and under the Fourth Amendment to the United States Constitution, *Illinois v. Rodriguez,* 497 US 177, 181, 110 S Ct 2793, 111 L Ed 2d 148 (1990); *Schneckloth v. Bustamonte,* 412 US 218, 219, 93 S Ct 2041, 36 L Ed 2d 854 (1973). *See* Annot., *Validity, Under Federal Constitution's Fourth Amendment, of Search Conducted Pursuant to Consent — Supreme Court Cases,* 111 L Ed 2d 850 (1993). In this case, the state argues that the search was reasonable because defendant consented to it.

"In evaluating whether [a] warrantless search [was] justified, we are bound by the trial court's findings of historical fact if evidence supports them." *State v. Stevens,* 311 Or 119, 126, 806 P2d 92 (1991). After noting that the arrest warrant was based on a certified copy of a conviction record

and judgment, which was served on defendant, the trial court in this case stated: "Thereafter, \* \* \* his rights were given in Spanish to the defendant and the question was posed to him after his rights were given in Spanish, does he have any guns or drugs. The answer was, 'No, go ahead and search'; what appears to me to be a consensual search." The record also reflects that the INS agent then asked directly whether they could search the premises. Defendant answered, "Yes, go ahead." Pursuant to that consent, the INS agent and the seven other officers then searched the apartment.

Defendant claims on appeal that his consent was not valid because it was not voluntary under the totality of the circumstances and because it was tainted by prior illegal conduct.[15] The Court of Appeals held that defendant's

---

[15] The court avoids addressing the voluntariness of defendant's consent by stating that the issue was not adequately preserved, 317 Or at 38 n 11. I disagree, both because the issue was preserved and because the burden of establishing consent is on the state. *State v. Paulson*, 313 Or 346, 352, 833 P2d 1278 (1992); *see* note 17, *post.*

Defendant's motion to suppress stated:

"Defendant moves the Court for an Order suppressing evidence seized from his residence without a warrant, including guns and statements.

"[Signature of lawyer]

"POINTS AND AUTHORITIES

"US Const., Amends. IV and XIV and the Oregon Const., Art. 1, Sec. 9, prohibit unreasonable searches. Evidence in this case was seized without a search warrant, and the search was *prima facie* unreasonable; *Katz v. US*, 389 US 347 (1967) and *State v. Miller*, 269 Or 328 (1974).

"US Const. Amends V and XIV prohibit coerced self-incrimination, as does Oregon Const. Art. 1, Sec. 12. ORS 136.425 limits use of statements of defendant.

"Statements produced by, and evidence seized as a result of illegal arrest must be suppressed; *Wong Sun v. US*, 371 US 471 (1963)."

In *State v. Miller*, 269 Or 328, 334, 524 P2d 1399 (1974), this court stated:

"In considering the sufficiency of the motions to suppress in this case it must be kept in mind that a search and seizure without a warrant is per se unreasonable and that the state has the burden to establish the legality of the search in such a case. \* \* \*

"It follows that a motion to suppress evidence seized during a search without a warrant, supported by an affidavit stating that the search and seizure was made without a warrant, is sufficient to place that burden upon the state."

If the court is correct that the exploitation and voluntariness prongs of the consent test are independent, separable inquiries, it can only follow that the state's burden in answering a motion to suppress evidence obtained during a warrantless search is to prove that neither prong invalidates the consent. In this case, defendant did all that was necessary to call the state to its burden at both the trial level (contrary to the

consent to the search was obtained by exploitation of illegal police conduct, *State v. Rodriguez, supra*, 110 Or App at 551, but in this case I have found no illegal police conduct before the request to search the apartment.[16]

In analyzing the voluntariness of consent, this court has looked to federal cases stating that in the context of an encounter with an officer, "the proper test for voluntariness is to examine the totality of the facts and circumstances to see whether the consent was given by defendant's free will or was the result of coercion, express or implied." *State v. Wolfe*, 295 Or 567, 572, 669 P2d 320 (1983) (citing *State v. Kennedy*, 290 Or 493, 502, 624 P2d 99 (1981), and *Schneckloth v. Bustamonte, supra*, 412 US at 226-27)); *State v. Dimeo*, 304 Or 469, 474, 747 P2d 353 (1987). Further, the state bears the burden of proving voluntariness by a preponderance of the evidence in order to justify a search under the consent exception to the warrant requirement. *State v. Paulson*, 313 Or 346, 352, 833 P2d 1278 (1992). This is true under either Article I, section 9, of the Oregon Constitution, *State v. Stevens, supra*, 311 Or at 137, or under the Fourth Amendment to the Constitution of the United States, *United States v. Matlock*, 415 US 164, 177, 94 S Ct 988, 39 L Ed 2d 242 (1974).

---

court's conclusion, 317 Or at 38 n 11), and the appellate level (as the court agrees, *id.*). Raising an issue at trial is essential for preserving an issue for appeal where the error is not a plain error apparent on the face of the record; identifying a source for the position is less important, and making a particular argument is less important. *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988).

[16] The Court of Appeals' opinion is not explicit about what constituted the illegal police conduct, but there is a suggestion about the impropriety of having the Portland police officers accompany the INS agent to defendant's residence. *State v. Rodriguez*, 110 Or App 544, 550, 823 P2d 1026 (1992). It is true that "ORS 181.850 forbids local law enforcement personnel from participating in the arrest of a person 'whose only violation of law is that [he is] residing in the United States in violation of federal immigration laws,' " *id.*, but I see no prohibition of local law enforcement personnel from acting pursuant to consent to search when that consent is obtained following a valid arrest by an INS agent. If the arrest had been illegal, that could have a bearing on the validity of the consent, *see* note 17, *post*, but that is not this case. As a matter of federal law, the validity of the arrest by the INS agent here is not affected by the agent's motive in arresting defendant (*i.e.*, whether the INS agent's motive was to deport defendant or to cooperate with state officers in gathering evidence). In *Scott v. United States*, 436 US 128, 137-38, 98 S Ct 1717, 56 L Ed 2d 168 (1978), the United States Supreme Court observed that alleged violations of the Fourth Amendment should be analyzed from an objective viewpoint without regard to the subjective intent or motive of the officer involved. Thus, the state of mind of the officer is not relevant. The significant inquiry under federal law is whether, from an objective viewpoint, the officer exceeded the scope of his authority.

In this case, although defendant had been lawfully arrested (seized) when he consented to a search, "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." *United States v. Watson, supra*, 423 US at 424. That principle continues to be true, at least where a defendant is in custody pursuant to a valid arrest. *Cf Florida v. Royer*, 460 US 491, 507-08, 103 S Ct 1319, 75 L Ed 2d 229 (1983) ("[b]ecause we affirm the * * * conclusion that Royer was being illegally detained when he consented to the search of his luggage, we agree that the consent was tainted by the illegality and was ineffective to justify the search").[17]

---

[17] The illegality of police conduct before consent may affect the validity of consent, either because it affects the voluntariness of the consent under the totality of the circumstances (*e.g.*, consent pursuant to illegal arrest) or because it is in exploitation of illegal conduct (*e.g.*, consent requested based on knowledge derived from illegal search). *See State v. Kennedy*, 290 Or 493, 502-03, 624 P2d 99 (1981) ("the burden on the police to show voluntariness when consent occurs after illegal police conduct is greater than when no illegality has occurred"); *Florida v. Royer*, 460 US 491, 497-508, 103 S Ct 1319, 75 L Ed 2d 229 (1983) (quoted in text, *ante* at 62); *Wong Sun v. United States*, 371 US 471, 488, 83 S Ct 407, 9 L Ed 2d 441 (1963); *see also* 3 LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 8.2(d) (2d ed 1987) (discussing validity of consent after illegal police action); 68 Am Jur 2d 715, Search and Seizure § 89 (section on consent after illegal arrest).

If the findings that the court assumes, but declines to make, are eliminated from the court's analysis, the court's opinion is reduced to a holding that, even assuming prior illegality, the warrantless search was valid because of consent. The court does so by effectively dodging even the issue of consent by addressing only one prong (exploitation of illegality) of the consent issue while conveniently avoiding the voluntariness prong of consent by claiming that it was not adequately argued. *But see* note 15, *ante* (defendant's argument adequate to raise issue and to put state to its burden).

However, the court's analysis of consent is inadequate in light of its assumption that the arrest violated Article I, section 9, *i.e.*, that the arrest was unlawful, 317 Or at 37. The court's conclusion that if an arrest does not violate the Fourth Amendment, evidence found in a subsequent search is not subject to suppression under the Fourth Amendment, 317 Or at 44-45, states the obvious — that if there is valid consent to search, evidence obtained pursuant to that consent is not subject to suppression. The court appears to assume, however, that if an arrest does not violate the Fourth Amendment, consent to search will *always* be valid. This is not true for at least two reasons.

First, some other illegality or coercion negating voluntariness, such as a demand for consent at gunpoint, could take place after an arrest, even if the arrest does not violate the Fourth Amendment. Clearly, a prior valid arrest under the Fourth Amendment does not assure the validity of the consent obtained later at gunpoint. Therefore, notwithstanding an arrest that does not violate the Fourth Amendment, the search and, therefore, the issue of consent must be considered independently under the Fourth Amendment.

Second, in the absence of an applicable federal statute, state law determines whether an arrest is valid as the predicate for determining whether a subsequent

warrantless search satisfies the Fourth Amendment. *See, e.g., Johnson v. United States*, 333 US 10, 13-17, 68 S Ct 367, 92 L Ed 436 (1948) (determining validity of search incident to arrest under Fourth Amendment after first determining validity of arrest under state law). If there is a violation of the Fourth Amendment under these circumstances, the exclusionary rule of the Fourth Amendment, made applicable to the states by the Due Process Clause of the Fourteenth Amendment, *Mapp v. Ohio*, 367 US 643, 655, 81 S Ct 1684, 6 L Ed 2d 1081 (1961), would apply, *id.* at 657. The holding in *California v. Greenwood*, 486 US 35, 43, 108 S Ct 1625, 100 L Ed 2d 30 (1988), relied on by the court, 317 Or at 44-45, that state law does not determine what is a reasonable search under the Fourth Amendment, does not affect the rule that determining the validity of arrest as a predicate for determining the validity of a search is a question of state law.

For example, state law could say that a warrantless arrest is never valid under any circumstances. If, after arresting a fleeing felon without a warrant, officers requested consent to search the felon's house, and the felon agreed to the search only after being told repeatedly that the officers would hold him in custody until he consented, the Fourth Amendment's limitations on unreasonable searches and seizures are not discarded. Rather, the search would be analyzed as a warrantless search requiring consent; in this example, the consent was clearly obtained in exploitation of the illegal arrest (which was illegal notwithstanding the fact that it did not violate the Fourth Amendment). I believe that under the Fourth Amendment, consent would be invalid in this scenario because of the exploitation of the illegal arrest and the lack of voluntariness, and the evidence would be suppressed.

Likewise, in this case, given the court's assumption that the arrest was unlawful in that it violated Article I, section 9, of the Oregon Constitution, the court's Fourth Amendment analysis is not complete unless the court analyzes the validity of the consent under the Fourth Amendment. In the absence of an applicable federal statute, state law determines the validity of the underlying arrest even when the issue is the constitutionality under the Fourth Amendment of a subsequent search.

In this case, when the issue of consent is analyzed under the Fourth Amendment in the wake of the court's analysis, the quagmire that the court has created but avoided presents itself: How do you analyze the validity of consent (*i.e.*, whether consent was achieved in exploitation of an illegality or was otherwise not voluntary) when the validity of the arrest is a factor to consider, but the arrest was both *invalid* under state law and *valid* under federal law (and not only because it does not violate the Fourth Amendment as in the example above, but also because it is expressly authorized by federal statute)? The conflict is clear when the court's analysis and conclusion of the consent issue under the state constitution may be different than the analysis of the consent issue under the federal constitution in light of *Florida v. Royer, supra*, 460 US at 507-08 (quoted in text *ante* at 62; *see* LaFave, *supra*, at 192 ("[A]n illegal arrest bears uniquely on the question of voluntariness, for it constitutes a false claim of authority over the person in much the same way that reliance upon an illegal search warrant constitutes a false claim of authority over the premises named in the warrant").

The court's attempted solution is to claim that because the "federal" arrest is valid, there is no Fourth Amendment problem, but that is only true in this case because of the federal statute and the Supremacy Clause, which prevents state law from invalidating the arrest; thus, the court's conclusion can only be justified because of the Supremacy Clause that it insists is inapplicable in order to justify an approach different than the one I have offered. If, in fact, there was an invalid arrest under state law, and if, in analyzing consent in that context, the consent was invalid, the Fourth Amendment would be violated and the exclusionary rule would apply, notwithstanding the fact that the arrest did not violate the Fourth Amendment. The simple truth, however, is that "in [the] absence of an applicable federal statute the

Many of the same factors considered in *Watson* in concluding that the defendant's consent while in custody was voluntary are present here:

> "There was no overt act or threat of force against [defendant] proved or claimed. There were no promises made to him and no indication of more subtle forms of coercion that might flaw his judgment. He had been arrested and was in custody, but his consent was given while on a public street [here, consent was given in his own home], not in the confines of the police station. Moreover, the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search. Similarly, under *Schneckloth*[, *supra*], the absence of proof that [defendant] knew he could withhold his consent, though it may be a factor in the overall judgment, is not to be given controlling significance. There is no indication in this record that [defendant] was a newcomer to the law, mentally deficient, or unable in the face of a custodial arrest to exercise a free choice. He was given *Miranda* warnings and was further cautioned that the results of the search * * * could be used against him. He persisted in his consent." *United States v. Watson, supra,* 423 US at 424-25 (footnote omitted).

Indeed, in this case, defendant volunteered his consent in response to the INS agent's question whether defendant had drugs or guns, *see State v. Kennedy, supra,* 290 Or at 504 ("such a volunteering of consent without a prior request from police is a strong indication of voluntariness"), and then affirmed his consent in response to a specific request to search. I conclude that there is evidence to support the trial court's findings of historical fact and that those findings establish defendant's consent to the search.

## IV. CONCLUSION

In sum, although I agree with the result reached by the court in this case, I do not agree with the court's method

---

law of the state where an arrest without warrant takes place determines its validity," *United States v. Di Re,* 332 US 581, 589, 68 S Ct 222, 92 L Ed 210 (1948). Because of the supremacy of federal law, where there is an applicable federal statute, state law does not determine the validity of an arrest. The court's analysis to the contrary is wrong.

In contrast, my approach recognizes the supremacy of federal law in determining the validity of the "law," the "warrant," and, therefore, the arrest, and recognizes that state law could, but has not, put restrictions on evidence obtained from valid federal arrests. *See* note 13, *ante.*

of analysis or its reasoning. I reach the same result by employing a substantially different approach.

Van Hoomissen, J., joins in this opinion.