Argued and submitted November 28, 1994, affirmed January 25, 1995

## STATE OF OREGON,
*Respondent,*

*v.*

## JOHN T. WILKINSON,
*Appellant.*

(CM92-2135; CA A80532)

889 P2d 351

Ingrid A. MacFarlane, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Richardson, Chief Judge,* and De Muniz and Leeson, Judges.

LEESON, J.

---

* Richardson, C. J., *vice* Rossman, P. J., retired.

## LEESON, J.

Defendant appeals from his conviction for first-degree burglary. ORS 164.225. He assigns error to the trial court's denial of his motion to suppress evidence seized during a warrantless search of his car. We review for errors of law, ORS 138.220, and affirm.

The facts are not in dispute. For several weeks before defendant's arrest, there had been an unusually high number of burglaries of occupied houses in a rural area of southern Benton County. The burglaries generally occurred between 11:00 p.m. and 3:00 a.m. Based on information supplied by victims and gathered through police investigations, the police suspected that two men driving either a small black car or a large yellow car were responsible for the crimes. During an investigation of the most recent burglary, police discovered tire tracks from newer tires and oil standing in a puddle where they believed the burglars had parked their car. At about 1:00 a.m. on December 12, 1992, Benton County Deputy Stephens saw an older yellow sedan parked in a field several hundred feet from a farmhouse in southern rural Benton County. There was no apparent reason for a car to be parked there.[1] Stephens believed that he had located the burglary suspects and radioed for Deputy Downing to join him. When Downing arrived, the two officers drove up to and parked behind the car. They approached the car with their guns drawn because of their concern that persons who burglarize occupied homes are more dangerous than those who burglarize unoccupied homes. As they approached the car, Downing noticed that the tires were new and remembered that the tire prints found at the most recent burglary scene were made by a car with new tires. Defendant was seated in the front seat on the driver's side and a second suspect, Schneider, was lying down in the back seat. Defendant, then Schneider, were ordered out of the car, patted down, handcuffed, advised of their *Miranda* rights, told that they were not under arrest and told that they were being handcuffed for their own and the officers' safety. No weapons were found during the pat downs. After the officers learned that defendant and Schneider were co-owners of the car, they placed defendant in the back of one of the patrol cars.

---

[1] Defendant or his passenger told the officers that they had run out of gas.

The officers asked for and received consent from Schneider to search the car. One of the officers then placed Schneider in the back of the other patrol car. Both officers believed that Schneider was under the influence of drugs, in part because his "eyes were bouncing around" and he appeared to be "disoriented or disorganized." However, they felt that he understood their request for his consent to search the car.[2]

Downing approached the car, opened the hood and saw that the motor was covered with oil. He believed that this was consistent with the oil found at the site of the last burglary. Downing then searched the interior of the car and found a flashlight, a pair of binoculars with the name "Bob Riley" and a social security number scratched on it, two knives and other items. Defendant told Stephens that he received the binoculars some time ago from the son of a person named "Riley." The officers did not locate any items that they believed to be stolen. They released defendant and Schneider and began to drive away. Within a minute or two of leaving, a dispatcher notified the officers that the binoculars had been stolen. The officers returned to the car and arrested defendant and Schneider. Other items seized from the car were later determined to be stolen property.

Defendant moved to suppress all of the evidence seized by the deputies during the search of the car. In denying that motion, the trial court concluded that the officers had reasonable suspicion to stop the car; that the initial encounter with the officers was a stop, not an arrest; that the officers lacked probable cause to arrest defendant during the initial encounter; and that Schneider's consent to search the car was valid.

On appeal, defendant concedes that the officers had reasonable suspicion to stop his car. He argues, however, that under both Oregon and federal law, he was arrested when he was handcuffed and placed in the back of the patrol car, and that the arrest was unlawful. Defendant also argues that Schneider's consent to the search of the car was invalid,

---

[2] The trial court found that there was no evidence indicating that Schneider misunderstood the request or that he did not knowingly and voluntarily consent to the search.

because it was derived from the officers' exploitation of their unlawful conduct. He does not claim that Schneider's consent was involuntary. The state argues that, even assuming that defendant was under arrest and that the arrest was unlawful, Schneider's consent was valid. It maintains that this issue is controlled by *State v. Rodriguez*, 317 Or 27, 854 P2d 399 (1993).

In *Rodriguez*, a United States Immigration and Naturalization Service (INS) agent, an FBI agent, and several local police officers went to the defendant's apartment with an administrative arrest warrant issued by the INS. The INS agent arrested the defendant and advised him of his *Miranda* rights and then asked the defendant if he had any drugs or guns in the house. The defendant responded, "No, go ahead and look." 317 Or at 30. The INS agent then asked the defendant if the officers could search the apartment. He agreed to the search. The officers found guns, and the defendant was later charged with and convicted of being an ex-convict in possession of a firearm.

The Supreme Court held that, even assuming that the defendant's arrest was an unreasonable seizure under Article I, section 9,[3] the defendant's consent was not obtained by exploitation of that unlawful conduct. The court noted that unlawful police conduct prior to consent may affect the validity of the consent in two ways: either because it affects the voluntariness of the consent when viewed in the totality of the circumstances, or because it results from exploitation of unlawful conduct. 317 Or at 38; *see State v. Kennedy*, 290 Or 493, 502-03, 624 P2d 99 (1981); *see also Florida v. Royer*, 460 US 491, 497-508, 103 S Ct 1319, 75 L Ed 2d 229 (1983); *Wong Sun v. United States*, 371 US 471, 488, 83 S Ct 407, 9 L Ed 2d 441 (1963). Because the defendant in *Rodriguez* did not raise the question of the voluntariness of the consent, the court did not address that issue. Regarding the question of exploitation of the unlawful arrest, the court said that there

[3] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

must be at least a "causal connection between the unlawful police conduct and the evidence uncovered during the subsequent consent search." *State v. Rodriguez, supra,* 317 Or at 38. However, a causal connection alone is not sufficient.[4] Evidence will be suppressed only when the defendant also shows that the police exploited their prior unlawful conduct by taking advantage of the circumstances to obtain the consent. The court held that the facts of the case showed that the INS agent

> "did not trade on or otherwise take advantage of the arrest to obtain defendant's consent to the search. Indeed, there is absolutely nothing in the encounter between the agent and defendant that can be construed as exploitation of the purportedly unlawful arrest. The mere fact that, but for the arrest, the agent would not have been standing in the doorway of defendant's apartment, in a position to ask defendant about drugs and guns, does not render the evidence discovered in the subsequent consent search inadmissible." 317 Or at 41.

Defendant argues that, unlike *Rodriguez,* in this case Schneider did not volunteer to have the officers search the car. However, in *Rodriguez,* the officers did not rely on the defendant's volunteered offer to search. As in this case, they asked for his consent to search and he agreed. Even if we assume that the officers arrested defendant when they handcuffed him and placed him in the back of the patrol car, and that the arrest was not supported by probable cause and was, therefore, unlawful, Schneider's consent nonetheless was voluntary and was not the product of the officers' exploitation of illegal conduct.[5] Defendant insists that the officers "gained power, both through physical restraint and through psychological intimidation." That assertion is based solely on the contention that he and Schneider were arrested. He does not show that Schneider's actions were the result of physical or psychological coercion or anything other than an act of free will. Nothing in the record suggests that the officers

---

[4] The Supreme Court has rejected the "but for" test that would require the suppression of any evidence that would not have been discovered "but for" the unlawful police conduct. 317 Or at 39-40; *see also State v. Kennedy, supra,* 290 Or at 500-01; *State v. Quinn,* 290 Or 383, 394-97, 623 P2d 630 (1981).

[5] Defendant concedes that the question of the voluntariness of Schneider's consent was not properly raised during the suppression hearing.

attempted to trade on or take advantage of the arrest, in order to obtain Schneider's consent to search.

Defendant also argues that the Fourth Amendment to the United States Constitution requires suppression of the evidence. That argument fails for the same reason: He has not shown that the police exploited their prior unlawful conduct. The trial court did not err in denying defendant's motion to suppress evidence discovered in the search of his car.

Defendant's second assignment of error has previously been resolved against him. *State v. Stewart*, 123 Or App 147, 859 P2d 545 (1993), *on recon* 126 Or App 456, 868 P2d 794, *rev allowed* 319 Or 281 (1994).

Affirmed.