Argued and submitted November 7, 1996, decision of the Court of Appeals reversed; judgment of the circuit court affirmed April 17, 1997

STATE OF OREGON,
*Petitioner on Review,*

*v.*

SCOTT ERIC STANLEY,
*Respondent on Review.*

(CC 10-93-01272; CA A81472; SC S43291)

935 P2d 1202

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Mary M. Reese, Deputy Public Defender, Salem, argued the cause for respondent on review. With her on the brief was Sally L. Avera, Public Defender.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.

GRABER, J.

## GRABER, J.

Defendant was charged with unlawful possession of a controlled substance, methamphetamine. Before trial, he moved to suppress evidence of the methamphetamine, which a police officer had found on his person. The trial court denied that motion. Thereafter, after a trial on stipulated facts, the court found defendant guilty. The Court of Appeals reversed. *State v. Stanley*, 139 Or App 526, 912 P2d 948 (1996). For the reasons that follow, we reverse the decision of the Court of Appeals and affirm the judgment of the trial court.

The pertinent facts are undisputed. On January 2, 1993, Springfield Police Officer Kemper responded to a call, relayed by a police dispatcher, notifying her of a possible robbery at the Glenwood Market. The dispatcher told Kemper that the clerk at the market reported that she was worried about two men who were "very high on something" and who had been on the premises for about an hour. The men had asked the clerk questions about the location of the police and had asked how often police came by the store. The clerk believed that the two men were planning to rob the store, and she expressed concern about her safety.

When Kemper arrived at about 6:20 p.m., she saw two men standing at a pay telephone next to the entrance of the market. One man, McCoy, was using the telephone while the other, defendant, stood nearby holding a briefcase. Kemper approached the two men. She noticed that defendant was wearing a pager and holding an open spiral notebook that contained a long list of first names, with telephone numbers next to them. Kemper testified that the men's activities were "consistent with" the buying or selling of controlled substances.

Kemper asked defendant what he was doing at the store, while she allowed McCoy to continue talking on the telephone. Kemper noticed that defendant's behavior was "very extreme." His eyes were very dilated and were "blinking and bouncing." Defendant was agitated and could not stand still. He spoke so rapidly that Kemper could not understand what he was saying. McCoy displayed similar symptoms. Based on her training and experience, Kemper concluded that both

men were under the influence of methamphetamine or another stimulant. According to Kemper, defendant exhibited "the most extreme case of stimulant intoxication" that she had ever encountered.

At about 6:30 p.m., Officer Maloney arrived on the scene. Defendant and McCoy were still standing near the telephone. Kemper stepped aside to talk to McCoy. Kemper had noticed a bulge in the pocket of McCoy's jacket; she thought that he might have a weapon. McCoy continued to put his hands near his pocket, and Kemper asked him to stop. She told McCoy of her concern, and he consented to a search for weapons. During that search, McCoy grabbed Kemper's hand in an "aggressive" manner, resulting in his arrest for harassment. Kemper's search uncovered no weapon but did reveal a marijuana pipe and an unused syringe.

While Kemper was talking to McCoy, Maloney approached defendant and patted him down for weapons. He was concerned for his safety, because he was responding to a call reporting a possible robbery and, in his experience, a robber often is armed. Maloney told defendant that he was going to pat him down. Maloney performed "an open hand pat down for weapons on the outside of [defendant's] clothing. Feeling for any hard metal weapons."

During the pat-down, Maloney felt a metal container not shaped like a weapon. Maloney did not seize the container but asked defendant whether he "would * * * be willing to show" it to Maloney. Defendant took out the container and opened it, displaying three prescription pills. Maloney allowed defendant to put the container back into his pocket. Although Maloney had observed that defendant exhibited symptoms that were consistent with methamphetamine intoxication, he did not restrain defendant nor tell him that he could not leave. Defendant had placed a telephone call during the time Maloney was talking with him.

Meanwhile, Kemper had handcuffed McCoy and placed him in the back of a patrol car. She then joined Maloney and defendant, who were still near the telephone. Maloney asked defendant if he would show Kemper the pills that he had displayed earlier. Defendant agreed and, when he opened his jacket to retrieve the pills, both officers detected a

strong odor of methamphetamine. Because the odor was strong enough to burn her nose, Kemper concluded that defendant was in possession of methamphetamine. In her experience, when an odor is that strong, "100 percent of the time" the suspect is presently in possession of methamphetamine. Neither officer had smelled methamphetamine while talking to defendant earlier. Kemper then arrested defendant for possession of a controlled substance. She searched defendant, incident to that arrest, and found marijuana and methamphetamine.

The Court of Appeals majority held that the pat-down of defendant was illegal and that, under Article I, section 9, a police officer may not "exploit" the illegality by seeking and obtaining voluntary consent to search the container. 139 Or App at 530-38. According to the Court of Appeals, "exploitation occurs when unlawful police conduct reveals information that focuses police attention on the defendant and prompts them either to seek the defendant's consent or to ask questions leading to consent." *Id.* at 535. In a separate opinion, one judge concurred in the conclusion that Maloney's frisk of defendant was unlawful, but would have concluded that Maloney did not "exploit" his prior unlawful conduct in obtaining defendant's consent to search, because the unlawful police conduct did not "disclose[ ] information that, under the circumstances, implicated in any way defendant's possible involvement in illegal activities." *Id.* at 541 (Deits, P. J., concurring in part; dissenting in part) (footnotes omitted). The state petitioned for review, arguing that the proper rule is that "exploitation occurs only when a prior illegality has the effect of rendering the defendant's subsequent consent involuntary" and that, under its proposed rule, the trial court properly denied defendant's motion to suppress.

The premise for the Court of Appeals' opinions and the petition for review is that Maloney's pat-down of defendant was unlawful. We disagree with that premise. We conclude that the frisk of defendant was based on a reasonable suspicion and was justified on the ground of officer safety in the course of a valid stop.[1] Accordingly, we need not and do

---

[1] The state preserved that argument at trial and on appeal.

not address the meaning or function of the concept of "exploitation" of a prior illegality in Article I, section 9, jurisprudence.[2]

ORS 131.615(1) provides that "[a] peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry." In *State v. Jacobus*, 318 Or 234, 239, 864 P2d 861 (1993), this court established a two-step analysis to determine whether a challenged stop is lawful under that statute. First, it must be determined that a stop occurred. If so, the second inquiry is "whether the facts known at the time of the stop, combined with the inferences that the police officer reasonably drew from those facts, were sufficient to give rise to 'reasonable suspicion' by the officer that 'criminal activity was afoot.'" *Ibid.* (quoting *State v. Lichty*, 313 Or 579, 584, 835 P2d 904 (1992)). Reasonable suspicion "means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts." ORS 131.605(4).

A stop occurs when a peace officer who is lawfully present temporarily restrains a person's liberty. ORS 131.605(5). Maloney testified that defendant was not free to leave when he told defendant that he was going to conduct a pat-down. That being so, defendant was stopped.

Defendant concedes that, viewed objectively, the circumstances gave rise to a reasonable suspicion that he was engaged in criminal activity. Kemper testified to a subjective belief of criminal activity. We therefore conclude that the stop was supported by reasonable suspicion, as defined above, and thus that the stop was valid.

Having held that the stop was valid, we turn next to the separate question whether the frisk was justified. ORS 131.625(1) provides that "[a] peace officer may frisk a stopped

---

[2] For the same reason, we find it unnecessary in this case to resolve any issue respecting the scope or effect of 1996 Ballot Measure 40.

person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other person present." This court has stated:

> "Article I, section 9, of the Oregon Constitution, does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present. * * * [I]t is not our function to uncharitably second-guess an officer's judgment. A police officer in the field frequently must make life-or-death decisions in a matter of seconds. There may be little or no time in which to weigh the magnitude of a potential safety risk against the intrusiveness of protective measures. An officer must be allowed considerable latitude to take safety precautions in such situations. Our inquiry therefore is limited to whether the precautions taken were reasonable under the circumstances as they reasonably appeared at the time that the decision was made." *State v. Bates*, 304 Or 519, 524-25, 747 P2d 991 (1987).

In the present case, Maloney was responding to what he had been told was a possible robbery attempt. The dispatcher had told him that there were two suspicious persons at the Glenwood Market and that the store's clerk thought, "[d]ue to their actions," that the two suspicious person were "going to pull a robbery." Additionally, Maloney knew that defendant and his companion had asked the clerk of the store about the whereabouts of the police. In Maloney's experience, people who commit robberies often are armed. Maloney testified that defendant was "on his toes. Somewhat hyper." Although it is not entirely clear from the record when Maloney first observed defendant's nervous behavior, he testified that Kemper was talking to both subjects when he arrived and that he did *not* frisk defendant "immediately upon arriving there" but, rather, "shortly after." Maloney frisked defendant "[w]hen Officer Kemper was searching Mr. McCoy [and] he grabbed her. When she was checking for weapons."

In summary, Maloney faced a nervous robbery suspect whose companion was acting aggressively toward

another officer. The circumstances here demonstrate particularized facts giving rise to a reasonable suspicion that defendant posed an immediate threat to Maloney and to Kemper. Accordingly, the frisk was lawful. On appeal and on review, defendant does not argue that his consent, which followed the frisk, was involuntary. Therefore, we conclude that the trial court did not commit error when it denied the motion to suppress.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.