Argued and submitted October 29, 1997, affirmed May 20, petition for reconsideration allowed by opinion July 15, 1998
See 155 Or App 227, 963 P2d 728 (1998)

## STATE OF OREGON,
*Respondent,*

*v.*

## JAIME AMADE HERRERA-SORROSA,
*Appellant.*

### (96CR-0342; CA A93755)

959 P2d 619

Diane L. Alessi, Chief Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before De Muniz, Presiding Judge, and Deits, Chief Judge,* and Haselton, Judge.

HASELTON, J.

---

* Deits, C. J., *vice* Rossman, S. J.

## HASELTON, J.

Defendant appeals his convictions for possession of a controlled substance, ORS 475.992(4), resisting arrest, ORS 162.315, and escape in the third degree, ORS 162.145, assigning error to the trial court's denial of his motion to suppress evidence, including methamphetamine, discovered as a result of a warrantless search. Defendant asserts that, under ORS 810.410(3) and the analysis of *State v. Dominguez-Martinez*, 321 Or 206, 895 P2d 306 (1995), suppression was required, and, alternatively, that suppression was required because defendant was "stopped" without reasonable suspicion. We conclude that ORS 810.410(3) is inapposite and that, even if defendant was unlawfully "stopped" pursuant to ORS 131.605(6), he is not entitled to suppression because there was no exploitation of that alleged illegality. Accordingly, we affirm.

The trial court made the following findings of historical fact:[1] During the afternoon of March 1, 1996, three police officers with the South Coast Interagency Narcotics Team and an investigator with the Department of Justice drove through Coos Bay in two unmarked vehicles. One vehicle closely followed the other. The officers were not dressed in uniform. While driving through a residential area, Officer Foster, the driver of the second vehicle, noticed that a third vehicle was tailgating it. The officers stopped at a stop sign, and the third vehicle, which the officers later discovered was driven by James Colton, passed both vehicles driven by the police officers on the right side and made a right turn without stopping at the stop sign.

Officer Benz and investigator Dinsmore, who occupied the first vehicle, began to follow Colton, and the officers in the second vehicle, Foster and Collins, followed behind Benz. Colton turned off the road into an alley, pulled out of that alley and pulled over by a curb in front of a house. Colton pulled over of his own accord and without any signal by the officers that he should stop. Benz stopped his vehicle and

---

[1] We are bound by the trial court's findings of historical fact as long as they are supported by "constitutionally sufficient evidence." *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

parked behind Colton's vehicle. Collins stopped his vehicle farther down the block, but still behind Benz.

Benz approached Colton on the driver's side of the car, and Dinsmore walked to the passenger side of Colton's car where defendant was sitting, but did not communicate with defendant. Foster then approached defendant who was still sitting in the car. Foster identified himself as a police officer. He asked defendant if he would mind stepping out of the vehicle. Defendant stepped out of the car. Foster asked defendant if he had identification, and defendant replied that he did not. Foster asked defendant for his name, and defendant gave a name that Dinsmore thought was incorrect. Foster asked defendant if he could look in defendant's wallet, and defendant consented. Finding no identification in the wallet, Foster returned it to defendant. Foster asked defendant if he could search defendant's shirt pocket, and defendant again consented. Foster found money and some tissue paper which contained a substance he believed to be methamphetamine. Foster and Dinsmore prepared to arrest defendant, but before Foster could handcuff defendant, defendant broke free and ran. The officers caught and arrested him.

Defendant was charged with possession of a controlled substance, ORS 475.992(4), conspiracy to deliver a controlled substance, ORS 161.450; ORS 475.992(1), delivery of a controlled substance, ORS 475.992(1), conspiracy to possess a controlled substance, ORS 161.450; ORS 475.992(4), resisting arrest, ORS 162.315, and escape in the third degree, ORS 162.145. Defendant moved to suppress the money, the controlled substances, and any statements he made as a result of the warrantless search. First, defendant argued that the officers lacked reasonable suspicion to stop him, and, therefore, that the search and arrest were an exploitation of the unlawful stop. Second, defendant argued that because he was a passenger in a vehicle whose driver was being questioned on a traffic offense, *Dominguez-Martinez*, 321 Or 206, and *State v. Foster*, 139 Or App 303, 912 P2d 377, *rev den* 323 Or 691 (1996), precluded the officers from questioning or investigating defendant on any matter unrelated to the traffic offense. The state responded that, under *State v. Holmes*, 311 Or 400, 813 P2d 28 (1991), no stop occurred; rather,

Foster and defendant engaged in "mere conversation" and defendant consented to the search of his person.

The trial court found that Colton and defendant were not stopped when Colton parked the car and the officers approached and questioned its occupants. The court further concluded that defendant consented to Foster's requests to step out of the car and to allow a search of his person. Thus, finding no stop and a consensual search, the trial court denied the motion to suppress. Following a jury trial, defendant was convicted of possession of a controlled substance, resisting arrest, and escape in the third degree.

On appeal, defendant assigns error to the denial of his motion to suppress and repeats his arguments made to the trial court. The state responds, first, that there was no traffic stop here because the officers did not cause Colton and defendant to stop their vehicle; rather, Colton parked of his own volition. Thus, the state asserts, ORS 810.410 and *Dominguez-Martinez* are not applicable.[2] Second, the state suggests that ORS 810.410(3) also is not applicable if Benz had not yet questioned Colton at the time defendant was questioned, because a traffic stop was not then under way. Third, even if a traffic stop was under way as to the driver, the state argues, officers are not restricted by ORS 810.410 and *Dominguez-Martinez* with respect to passengers.[3] Alternatively, if ORS 810.410(3) does not apply, the state contends that defendant was not stopped under ORS 131.615, Article I, section 9, of the Oregon Constitution, or the Fourth Amendment to the United States Constitution, and that the officers and defendant engaged in "mere conversation." If defendant was stopped without reasonable suspicion, the state argues, suppression should not result because the officers did not exploit the illegality in seeking consent to search. Finally, the state argues, if we find that suppression was

---

[2] At oral argument, the state also asserted, for the first time, that defendant had failed to preserve his present contentions with respect to ORS 810.410(3) and *State v. Dominguez-Martinez*, 321 Or 206, 895 P2d 306 (1995). Based on our reading of defendant's "Memorandum in Support of Motion to Suppress," we conclude otherwise.

[3] Since briefing and oral argument, we have decided that issue adversely to the state. *See State v. Wright*, 152 Or App 282, 954 P2d 809 (1998); *State v. Taylor*, 151 Or App 687, 950 P2d 930 (1997).

required under ORS 810.410 or ORS 131.615, the provisions of section 1 of 1997 Senate Bill 936, codified at ORS 136.432, prohibit the suppression of evidence on statutory grounds.[4]

█     We first address whether the officers effected a traffic stop under ORS 810.410(3).[5] The trial court made the following finding:

> "[Defendant] first contends that the vehicle driven by Colton was stopped. From the above stated facts, the court determines that Colton stopped the vehicle of his own accord. There was no stop. The mere act of following a vehicle is not a stop. Further, the fact that two officers approached the vehicle and talked to both the driver and passenger is not a stop." (Citations omitted.)

*State v. Terhear / Goemmel*, 142 Or App 450, 458-59, 923 P2d 641 (1996), frames the inquiry. In *Terhear*, an officer on foot patrol saw the defendant ride by in a car without wearing a seatbelt. A few minutes later, the officer saw the defendant sitting in the same car and parked in a loading zone. The officer approached the defendant and told him that he saw him riding in the car without wearing a seatbelt and that the car was parked illegally. The officer requested consent to search and searched the defendant's belongings. We held that the defendant was stopped, the stop was a traffic stop, and the officer exceeded the scope of the traffic stop by requesting consent to search. *Id.* at 456-59.

The premise of *Terhear* was that a traffic stop occurred because the officer, immediately upon approaching defendant in a parked car, told him that he saw him commit a *traffic infraction*. That announcement by an officer would, we concluded in *Terhear*, cause a person to reasonably

---

[4] Since briefing and oral argument, we have also resolved that issue adversely to the state, *i.e.*, that ORS 136.432 does not apply to our review of evidentiary issues in trials culminating in judgments of conviction entered before December 5, 1996. *See State v. Meyers*, 153 Or App 551, 958 P2d 187 (1998). In this case, the judgment was entered on June 7, 1996.

[5] ORS 810.410(3) provides, in part:

"A police officer:

"* * * * *

"(b) May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

believe that she or he was not free to leave without further action by the officer. *Id.* at 458-59. In other words, that announcement initiated the traffic stop with the occupants of the parked vehicle.

Here, the evidence was disputed, or at least unclear, as to whether officer Benz told Colton that he had committed a traffic infraction. Given that evidence, which permitted the trial court to find that Benz did not "announce to [Colton] that he * * * had broken the law in the officer's presence," *Terhear*, 147 Or App at 458, we assume that the court resolved that matter consistently with its ultimate conclusion that there was no stop. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Accordingly, because the factual predicate for our analysis in *Terhear* did not occur here, there was no traffic stop. ORS 810.410 is inapposite.

■ Defendant contends that, even if the encounter was not a traffic stop, it was, nevertheless, an unlawful stop. Defendant asserts, particularly, that he was stopped without reasonable suspicion in violation of ORS 131.615(1),[6] Article I, section 9, of the Oregon Constitution,[7] and the Fourth Amendment to the United States Constitution[8] when he was asked to step out of the car, asked for identification, and asked for consent to search, and that that illegality compels the suppression of the evidence discovered in the subsequent search. The state responds that, even if defendant was unlawfully stopped, the evidence discovered after the stop

---

[6] ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed or is about to commit a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

[7] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[8] The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

should not be suppressed because Officer Foster did not exploit that illegality in seeking consent to search. *See State v. Rodriguez*, 317 Or 27, 39-41, 854 P2d 399 (1993); *State v. Stanley*, 139 Or App 526, 532-38, 912 P2d 948, *rev'd on other grounds* 325 Or 239 (1996).

We agree with the state. We need not consider whether defendant was stopped because, even if he was unlawfully stopped, he is not entitled to suppression because Officer Foster did not exploit the alleged illegality in gaining consent to search. *See, e.g., State v. Austin*, 145 Or App 217, 222, 929 P2d 1022 (1996), *rev den* 325 Or 368 (1997) (holding that the question of whether the defendant was seized need not be reached because the evidence the defendant sought to suppress was not the product of exploitation of the alleged unlawful seizure).

In *Rodriguez*, the Supreme Court held that "evidence obtained during [a voluntary[9] consent] search should be suppressed only in those cases where the police have exploited their prior unlawful conduct to obtain that consent[.]" 317 Or at 40. We amplified that standard in *Stanley*, holding that evidence obtained during a consent search should be suppressed only when "unlawful conduct focused police attention on defendant and prompted the officers to seek his consent." 139 Or App at 534.

*State v. Wenger*, 143 Or App 90, 98, 922 P2d 1248 (1996), is instructive. There, police officers unlawfully stopped the defendant, and, during that stop, they arrested him, searched him, and searched his van. However, there was "no evidence that the officers' unlawful conduct * * * revealed any information that led to defendant's arrest and search incident thereto or the subsequent consent search of his vehicle." *Id*. Rather, the defendant's arrest was prompted by independent information—a radio tip that the defendant had just engaged in a drug transaction—that the officers received after the defendant was stopped but before he was arrested. The subsequent lawful search incident to arrest yielded evidence that, in turn, led to the request for consent to search the defendant's van. Thus, although the allegedly

---

[9] Defendant does not argue that his consent was not voluntary.

unlawful stop enabled officers "to arrest defendant immediately, because he was unlawfully stopped at the time," *id.,* that stop did not impermissibly taint the subsequent arrest and searches. *Id.* at 98-99. *See also State v. Daugaard,* 142 Or App 278, 282, 921 P2d 975 (1996); *State v. Wilkinson,* 132 Or App 531, 535-37, 889 P2d 351, *rev den* 321 Or 394 (1995).

The same principle applies here. Even assuming that defendant was stopped without reasonable suspicion, Officer Foster did not exploit that alleged illegality in seeking consent to search defendant. The alleged stop did not reveal anything that prompted Foster to ask if defendant would consent to a search. Because the officer did not exploit the alleged illegality, the trial court did not err in denying defendant's motion to suppress.

Affirmed.