Argued and submitted October 25, 2000, affirmed May 9, 2001

## STATE OF OREGON,
*Respondent,*

*v.*

## RONALD ELDON LEE,
*Appellant.*

## C973359CR; A102367

23 P3d 999

Stephen A. Houze argued the cause and filed the brief for appellant.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Douglas F. Zier, Assistant Attorney General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction of two counts of robbery in the first degree, ORS 164.415, one count of robbery in the second degree, ORS 164.405, two counts of unlawful use of a weapon, ORS 166.220, and one count of attempted assault in the second degree, ORS 163.175. He asserts that the court erred: (1) in denying his motion to suppress evidence; (2) in refusing to instruct on the crime of menacing, ORS 163.190, as a lesser-included offense of first- and second-degree robbery; and (3) in delivering an "acquittal first" jury instruction. We affirm.

We state the facts and all reasonable inferences that may be drawn from them in the light most favorable to the state. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). Police received a call from the victim that defendant and two other individuals had just taken property from her at gunpoint. The police determined defendant's address, went to his apartment, and took up positions around it. One officer, Sergeant Allison, placed a telephone call to defendant inside the apartment and asked him to come outside. Defendant emerged from the apartment, and the officers handcuffed him. Another officer, Cumiford, asked defendant for consent to enter the apartment. Defendant answered that it was "okay" with him. The entry and resulting search ultimately led the officers to discover several items of personal property that had been taken from the victim.

Defendant was charged with first-degree robbery by the "use or attempt to use a dangerous weapon"; with first-degree robbery while "armed with a deadly weapon"; and with second-degree robbery "by represent[ing] by word or conduct that he was armed with what was purported to be a dangerous weapon."

Defendant moved to suppress all evidence arising from the officers' search of his apartment. He asserted that the officers lacked a warrant or exigent circumstances to justify a search without a warrant. Defendant argued that the state could not rely on his consent, because it was obtained by exploiting the unlawful arrest that preceded it. The trial court denied the motion on the ground that the search of the

apartment was justified by defendant's "free and voluntary consent."

During trial, defendant requested that the court instruct the jury regarding the crime of menacing. According to defendant, menacing is a lesser-included offense of both first- and second-degree robbery. The trial court declined to deliver the instruction. The state requested an "acquittal first" instruction pursuant to ORS 136.460(2), which provides that, the jury may consider a lesser-included offense only if it first finds the defendant not guilty of a charged offense. The court gave the state's requested instruction.

We begin with defendant's first assignment of error, that the trial court should not have denied his motion to suppress. He argues that the court should have granted the motion because the officers effectively seized him in his apartment without a warrant when they telephoned him and told him to step outside. In his view, because the unlawful seizure led to the search of his apartment and the discovery of inculpatory evidence, the evidence should have been suppressed as fruit of the poisonous tree. The state responds that the officers merely asked defendant to step outside, and so the telephone call did not amount to an unlawful seizure. In any event, the state argues, defendant consented to the search of his apartment.

■ We need not address whether the telephone call amounted to an unlawful seizure, because, even if it did, the fact remains that defendant consented to the search of the apartment.

In *State v. Rodriguez*, 317 Or 27, 854 P2d 399 (1993), the defendant was arrested pursuant to an Immigration and Naturalization Service administrative arrest warrant. The arresting officers obtained the defendant's consent to search his apartment. During the search, the officers discovered evidence of a crime. The defendant moved to suppress the evidence on the ground that the arrest was unlawful due to certain defects in the administrative warrant and that the evidence was fruit of the poisonous tree. The trial court denied the defendant's motion. On appeal, the Supreme Court held that it did not need to decide whether the defendant's arrest was invalid, because he had consented to the

search, and the consent was not obtained by exploitation of the unlawful arrest. *Id.* at 37. The court explained:

"Where, as here, the question of the voluntariness of the consent has not been raised, or where the court has determined that the consent was voluntary, unlawful police conduct occurring before a consent search still may affect the admissibility of evidence seized during that search. * * *

"Whether suppression is required in any such case will, however, depend on the nature of the connection between the unlawful police conduct and the evidence sought to be suppressed. As we have noted previously, evidence is subject to suppression in a criminal prosecution if it was *'obtained in violation* of a defendant's rights under [Article I, section 9].' *State v. Davis*, [313 Or 246, 253, 834 P2d 1008 (1992)] (emphasis supplied). Under that standard, there will have to be, at the very least, a causal connection between the unlawful police conduct and the evidence uncovered during the subsequent consent search. * * *

"A causal connection alone, however, still is not sufficient to require suppression. This court has rejected the so-called 'but for' test, which would require the suppression of any evidence that would not have been discovered 'but for' the unlawful police conduct. * * *

"* * * We think that evidence obtained during such a search should be suppressed only in those cases where the police have exploited their prior unlawful conduct to obtain that consent. * * *

"Mere physical presence as a result of prior unlawful conduct does not constitute exploitation of that conduct. Exploitation occurs when the police take advantage of the circumstances of their unlawful conduct to obtain the consent to search."

*Id.* at 39-40.

This case is squarely controlled by *Rodriguez*. The trial court found that defendant gave "free and voluntary consent" to the search of his apartment. Even assuming for the sake of argument that defendant's arrest was unlawful, nothing in the record suggests that, in obtaining that consent, the officers exploited their unlawful conduct.

Defendant argues that the record does show that the officers exploited their unlawful conduct. According to defendant, because he responded to the officers' request that he come outside, they were able to identify him and ask for his consent. The argument misperceives what constitutes "exploitation" under *Rodriguez*.

In *Rodriguez* itself, the Supreme Court cautioned that merely because consent would not have been obtained "but for" the unlawful conduct is not sufficient to require suppression. The police must "take advantage" of the unlawful conduct by, for example, trading on the unlawful conduct. *Rodriguez*, 317 Or at 40-41. Similarly, in *State v. Stanley*, 139 Or App 526, 534, 912 P2d 948 (1996), *rev'd on other grounds* 325 Or 239, 935 P2d 1202 (1997), we explained that, to constitute exploitation, the unlawful conduct must give the police more than the opportunity to seek consent; it must be the reason for seeking the consent. *See also State v. Peppard*, 172 Or App 311, 315-16, 18 P3d 488 (2001) (exploitation requires a causal connection, such as trading on the unlawful conduct or otherwise taking advantage of it to obtain consent).

In this case, it is undisputed that the police already had identified defendant from the victim's report. When they asked defendant to come out from his apartment, defendant complied without objection. When Cumiford asked for consent, there were no threats or promises made or offered. There is no evidence of the officers trading on their alleged unlawful conduct. There is no evidence that they took advantage of the situation in any way. Defendant's response to the officers' request to come outside the apartment certainly provided the opportunity for the officers to ask for his consent to search the apartment. But there is no evidence that it was the reason for seeking the consent. Instead, the record shows that the reason for asking for consent to search the apartment was the victim's report that defendant had participated in a robbery.

■ Defendant insists that, even if his consent was not obtained by unlawful exploitation under the state constitution, it was obtained by unlawful exploitation under the federal constitution. Under the federal constitution, the controlling inquiry is "the purpose or flagrancy of the official

misconduct" and whether a defendant's consent was "sufficiently an act of free will to purge the primary taint" of the misconduct. *United States v. Perez-Esparza*, 609 F2d 1284, 1289 (9th Cir 1979); *see also Peppard*, 172 Or App at 316 (applying federal law). Defendant has advanced no reason to regard any misconduct in this case as flagrant. Moreover, he offers no argument that his arrest in any way affected the voluntary nature of his consent. We therefore conclude that the trial court did not err in denying defendant's motion to suppress evidence derived from the search of his apartment.

We turn to the second assignment of error, that the trial court should have instructed the jury that menacing is a lesser-included offense of first- and second-degree robbery. Defendant argues that he was entitled to the instruction on menacing, because the crimes of first- and second-degree robbery cannot be committed without also committing menacing. The state argues that the crime of menacing requires proof that defendant intended to place the victim in fear of imminent serious physical injury, which is not required to prove either first- or second-degree robbery.

We review the trial court's refusal to instruct the jury on a lesser-included offense for errors of law. *State v. Moses*, 165 Or App 317, 319, 997 P2d 251, *rev den* 331 Or 334 (2000). A crime is a lesser-included offense of another crime if either of two circumstances exist: (1) the elements of the lesser offense necessarily are included in the greater offense because the elements of the former are subsumed in the latter; or (2) all of the elements of the lesser offense are expressly set forth in the accusatory instrument. *State v. Guzman*, 140 Or App 347, 351, 914 P2d 1120 (1996).

ORS 163.190 provides that a person commits the crime of menacing "if by word or conduct the person intentionally attempts to place another in fear of imminent serious physical injury." It bears emphasis that the statute requires proof of an *intent* to create fear, not that the actor create actual fear in a victim.

The relevant provisions of ORS 164.415 provide that a person commits the crime of robbery in the first degree if, in committing or attempting to commit a theft, the person either is armed with a dangerous weapon or uses or attempts

to use a dangerous weapon and uses or "threatens the immediate use of physical force upon another person." Similarly, the relevant provisions of ORS 164.405 provide that a person commits the crime of robbery in the second degree if, in committing or attempting to commit a theft, the person "[r]epresents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon" and uses or threatens immediate use of physical force.

■■    The first question is whether the elements of menacing necessarily are included in the offenses of first- and second-degree robbery. With respect to first-degree robbery, the answer is straightforward. Menacing requires that the defendant intend to place another person in fear of imminent serious physical injury. First-degree *robbery* requires use *or* a threat of immediate use of physical force, but it does not require that the defendant intend to place the victim in fear of physical injury. For example, first-degree *robbery* may be committed by a person who stalks a victim from behind, attacks the victim with a deadly weapon, and takes his or her possessions. Whether the defendant intends to create a state of fear in the victim is irrelevant to the commission of the crime. We conclude that the elements of menacing are not necessarily included in the elements of first-degree robbery.

■    Second-degree robbery poses a somewhat closer question. The offense requires proof that the defendant represent that he or she is armed with a dangerous weapon. We have previously held that a defendant "represents" to the victim that he or she is armed only if the defendant actually communicates that fact to the victim. *State v. Zimmerman*, 170 Or App 329, 333, 12 P3d 996 (2000). Thus, to commit second-degree robbery, the defendant must intend to cause the victim to be aware of the fact that he or she is armed with a dangerous weapon. It does not *necessarily* follow, however, that, because a defendant intends to communicate that he or she is armed, the defendant also intends to create in the mind of the victim the particular mental state of "fear of imminent serious physical injury." Suppose, for example, a defendant tells a victim, "I have a gun, but I don't want you to be afraid. Just give me your money, and no one will harm you in any way." If the victim complies, the defendant has committed

second-degree robbery. It may well be that many or most victims in such circumstances in fact will be afraid, but it does not necessarily follow that that is so, much less that the defendant intended it to be so. To require an instruction on a lesser-included offense, the lesser offense must *necessarily* be subsumed in the greater offense in all cases. *See Moses*, 165 Or App at 322. We conclude that the elements of menacing are not necessarily included in the elements of second-degree robbery.

The second question is whether the elements of menacing nevertheless are set forth in the accusatory instrument. As we have noted above, the indictment merely tracks the statutory language of first- and second-degree robbery. It does not allege that defendant intended to place the victim in fear of imminent serious physical injury.

Defendant insists that he was entitled to the menacing instruction because the evidence adduced at trial was sufficient to support a conviction on the lesser offense. In *State v. Washington*, 273 Or 829, 543 P2d 1058 (1975), the Supreme Court rejected that very argument, explaining that a lesser-included offense instruction is permissible only if there is a basis for it in the relevant statutory elements or the allegations of the indictment:

> "If defendant's approach were to be adopted, we believe that trial courts would be receiving requests for instructions limited only by the imagination and ingenuity of the defendant. Requests for such instructions would act only to further complicate the jury's decision-making process. * * * [T]rial judges, not being certain whether the requested instruction were actually proper under the new standard, would usually give the instruction in order to avoid any possibility of reversible error on appeal. This would not only needlessly prolong the court's instructions, but would also add to the number of issues which the jury would be required to consider—thereby substantially increasing the possibility for jury confusion and compromise verdicts."

*Id.* at 839-40. We conclude that the trial court did not err in failing to deliver an instruction on the offense of menacing.

We are left with defendant's final assignment of error, that the court should not have delivered an "acquittal

first" instruction to the jury. According to defendant, the delivery of that instruction violated his right to a fair trial guaranteed by Article I, section 11, of the Oregon Constitution, and violated his right to "jury autonomy" guaranteed by Article I, section 16. He also asserts, without elaboration, that the delivery of the instruction violates the United States Constitution. The state argues that defendant failed to preserve his state constitutional contentions and that, as to the federal constitution, defendant is simply wrong.

Since the briefing in this case, we decided *State v. Horsley*, 169 Or App 438, 8 P3d 1021 (2000), *rev den* 331 Or 692 (2001), in which we held that delivery of an "acquittal first" instruction does not violate either Article I, section 11, of the Oregon Constitution, or the Due Process Clause of the Fourteenth Amendment to the federal constitution. Defendant's remaining contention, that the delivery of the instruction violated Article I, section 16, was not raised below, and we will not address it for the first time on appeal.

Affirmed.