NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JAN 16 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-35138 |
| Plaintiff-Appellee, | D.C. Nos. 3:16-cv-01013-MO |
| v. | 3:04-cr-00005-MO-1 |
| KELLY DAVID ANKENY, Sr., | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, Chief Judge, Presiding

Argued and Submitted July 12, 2018
Submission Withdrawn September 18, 2018
Resubmitted January 15, 2020
Portland, Oregon

Before: WARDLAW and OWENS, Circuit Judges, and LEFKOW,** District
Judge.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Joan H. Lefkow, United States District Judge for the
Northern District of Illinois, sitting by designation.

Kelly David Ankeny appeals the denial of his motion to vacate his conviction under 28 U.S.C. § 2255.[1] We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(c)(2) and affirm.

Ankeny was sentenced under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), because he had one conviction of a violent felony and two of serious drug offenses. Ankeny filed a motion to vacate his sentence under 28 U.S.C. § 2255, arguing that after *Johnson v. United States*, — U.S. —, 135 S. Ct. 2551 (2015), declared vague the "residual clause" of the ACCA's definition of "violent felony," Ankeny's predicate conviction of Oregon second-degree robbery (Robbery II), Or. Rev. Stat. § 164.405, cannot be classified as a violent felony under § 924(c); thus, he should not have been sentenced as an armed career criminal. The district court denied the motion, holding that Ankeny's Robbery II conviction was of a crime of violence under the ACCA's "force clause." We review that decision *de novo*. *United States v. Parnell*, 818 F.3d 974, 978 (9th Cir. 2016).

A crime is a violent felony under the force clause if it "has as an element the use, attempted use, or threatened use of physical force against the person of

---

[1] Although Ankeny's prison term ended while this appeal was pending, he is still subject to a term of supervised release and thus remains in custody for purposes of § 2255. *Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002).

another." 18 U.S.C. § 924(e)(2)(B)(i). "'[P]hysical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (citing *Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003)). Recently, the Supreme Court clarified that this definition "encompasses robbery offenses that require the criminal to overcome the victim's resistance." *Stokeling v. United States*, 139 S. Ct. 544, 550 (2019).

"[T]o determine whether a defendant's conviction under a state criminal statute qualifies as a violent felony under the force clause, we do not look to the underlying facts of the defendant's actual conviction." *United States v. Walton*, 881 F.3d 768, 771 (9th Cir. 2018) (citing *Mathis v. United States*, 136 S. Ct. 2243, 2251 (2016)). Instead, we ask "whether the conduct proscribed by the statute *necessarily* involves the use, attempted use, or threatened use of physical force against the person of another." *Ward v. United States*, 936 F.3d 914, 917 (9th Cir. 2019) (quoting *United States v. Geozos*, 870 F.3d 890, 898 (9th Cir. 2017)) (quotation marks omitted). "State cases that examine the outer contours of the conduct criminalized by the state statute are particularly important because we must presume that the conviction rested upon nothing more than the least of the acts criminalized by that statute." *Walton*, 881 F.3d at 771–72 (quoting *United States v. Strickland*, 860 F.3d 1224, 1226–27 (9th Cir. 2017)) (internal quotation marks omitted).

17-35138

But if a statute is "divisible," meaning that what the state labels as a single crime is effectively several different crimes, we apply a modified categorical approach, "consult[ing] a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction, and then apply the categorical approach under the subdivision under which the defendant was convicted." *Id.* at 772 (quoting *United States v. Werle*, 815 F.3d 614, 619 (9th Cir. 2016)). "To be divisible, a state statute must contain 'multiple, alternative elements of functionally separate crimes.'" *United States v. Dixon*, 805 F.3d 1193, 1196 (9th Cir. 2015) (emphasis omitted) (quoting *Rendon v. Holder*, 764 F.3d 1077, 1085 (9th Cir. 2014)). The touchstone of a divisible crime is "alternative elements, which are essential to a jury's finding of guilt," rather than "alternative means, which are not." *Id.* at 1198 (quotation omitted). Elements are alternative if the prosecutor "must generally select the relevant element from its list of alternatives. And the jury, as instructions in the case will make clear, must then find that element, unanimously and beyond a reasonable doubt." *Id.* (quoting *Rendon*, 764 F.3d at 1085).

Robbery II is not categorically a violent felony. A person commits Robbery II by committing third-degree Oregon robbery (Robbery III), Or. Rev. Stat. § 164.395, and

> (a) Represent[ing] by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or

(b) [Being] aided by another person actually present.

Or. Rev. Stat. § 164.405(1)(a)–(b). Robbery III, in turn, occurs when "in the course of committing or attempting to commit theft . . . [a] person uses or threatens the immediate use of physical force upon another person with the intent of: (a) [p]reventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or (b) [c]ompelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft." Or. Rev. Stat. § 164.395(1). We have held that Oregon Robbery III is not a violent felony under the force clause because "[s]tate cases show that Oregon doesn't require physically violent force." *Strickland*, 860 F.3d at 1227 (collecting cases); *see also United States v. Shelby*, 939 F.3d 975, 979 (9th Cir. 2019) (reaffirming *Strickland* after *Stokeling*). By extension, because a defendant can commit Robbery II by having another person present during a nonviolent Robbery III, Robbery II does not necessarily entail the use of force.

But as Ankeny concedes, Robbery II is divisible.[2] Under Oregon law, each subsection of § 164.405(1) is an alternative element that must be proven to a jury

---

[2] We originally certified the question of Robbery II's divisibility to the Oregon Supreme Court, *United States v. Lawrence*, 905 F.3d 653, 659 (9th Cir. 2018), which declined certification in part because it understood existing Oregon

beyond a reasonable doubt. *State v. Gaines*, 365 P.3d 1103, 1108–09 (Or. Ct. App. 2015) (holding jury must concur on theory of second-degree robbery); *see also State v. White*, 211 P.3d 248, 254–55 (Or. 2009) (though holding Robbery II's two elevating conditions constitute a single crime under state law, acknowledging that they "involve proof of different facts"). That understanding holds true in Ankeny's case, where he was charged exclusively under subsection (a), corroborating our conclusion that the statute is divisible. *See Mathis*, 136 S. Ct. at 2256–57 (permitting courts to "peek at the record documents" to determine whether state treats items listed in a statute as elements). We therefore hold that Oregon Robbery II is divisible and accept Ankeny's concession.

Under the modified categorical approach, the information and guilty plea reveal that Ankeny was convicted of Robbery II under § 164.405(1)(a) because he represented that he was armed with what purported to be a dangerous weapon while committing Robbery III. We must therefore determine whether representing that one is armed in the course of committing Oregon Robbery III necessarily entails a threat of violent force.

It does. A threat of violent force under the ACCA "requires some outward expression or indication of an intention to inflict pain, harm or punishment."

---

law to answer our certified question. *United States v. Lawrence*, 441 P.3d 587, 589–90 (Or. 2019) (citing *State v. Gaines*, 365 P.3d 1103 (Or. Ct. App. 2015)).

*Parnell*, 818 F.3d at 980. Robbery II(a)'s representation element requires such an outward expression: the defendant must actively communicate to the victim during the course of a robbery that he or she is armed with what purports to be a dangerous or deadly weapon. *State v. Lee*, 23 P.3d 999, 1003 (Or. Ct. App. 2001) ("[T]o commit second-degree robbery, the defendant must intend to cause the victim to be aware of the fact that he or she is armed with a dangerous weapon."). Although Robbery III is not categorically violent, Robbery II(a)'s representation element entails an implicit threat to use a purported weapon capable of serious or deadly force if the victim resists the robbery. *See, e.g.*, *United States v. Perez-Silvan*, 861 F.3d 935, 942–43 (9th Cir. 2017) (holding that unlawful touching while "us[ing] or display[ing] a deadly weapon" constitutes a violent felony under the ACCA).

We further agree with the district court that Robbery II(a)'s representation element is "conjoined" with Robbery III's force element—that is, to commit robbery *and* represent that one is armed, one must commit robbery *by* representing that one is armed. The Oregon Supreme Court has described the elements in such terms, explaining that higher degrees of robbery correspond with increased "levels of threat that may persuade the victim to part with his or her property with more or less reluctance." *White*, 211 P.3d at 256. The Oregon Court of Appeals has implicitly conjoined Robbery III's force element and Robbery II(a)'s

17-35138

representation element by describing Robbery II(a) as "commit[ing] *theft* while representing that he was armed with what purported to be a deadly or dangerous weapon . . . ." *State v. Colmenares-Chavez*, 260 P.3d 667, 669 (Or. Ct. App. 2011) (emphasis added). Moreover, Oregon Robbery II(a) cases always involve the defendant's using the representation that he or she was armed as the means of threatening force against the victim. *See, e.g.*, *White*, 211 P.3d at 249–50 (defendant threatened to stab loss-prevention employee during robbery); *State v. Shields*, 407 P.3d 940, 941 (Or. Ct. App. 2017) (defendant confronted victims with a gun and demanded cash); *State v. Christner*, 624 P.2d 1085, 1086 (Or. Ct. App. 1981) (defendant threatened to shoot victim with a handgun).

Although other facts that may elevate simple robbery to Robbery I or II under Oregon law need not be tied to Robbery III's force element, Robbery II(a)'s representation element must. Unlike Robbery I, which criminalizes possessing but not using a dangerous weapon during a robbery, *Shelby*, 939 F.3d at 979, or Robbery II(b), which criminalizes committing a robbery with the aid of another person present who does not use or threaten force, *State v. Morgan*, 364 P.3d 690, 694–95 (Or. Ct. App. 2015), Robbery II(a) requires active use of the representation to commit the simple robbery. Ankeny has not cited and we are not aware of any Oregon cases suggesting otherwise.

8                                                                          17-35138

Nor do we see a reasonable possibility that Robbery II(a) could ever be applied to nonviolent conduct. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). In the district court, Ankeny proposed that a defendant who inadvertently displays a weapon during a nonviolent robbery but does not use the weapon to effect the robbery could be guilty of Robbery II(a) without threatening violent force. Ankeny rightly abandons that hypothetical here, because that defendant has not committed Robbery II(a), which requires an intentional representation. *Lee*, 23 P.3d at 1003. It would require vivid legal imagination to uncover a way to represent affirmatively that one is armed during a robbery without at least implicitly threatening to use the purported weapon if the victim resists. *See Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) ("[O]ur focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" (citation omitted)).

Finally, Ankeny argues that under *State v. Lee*, Robbery II(a) does not require proof that the defendant intends to threaten violent force against the victim. In *Lee*, the defendant argued that the jury should have been instructed on menacing—"by word or conduct . . . intentionally attempt[ing] to place another in fear of imminent serious physical injury"—as a lesser included offense of Robbery

9

II. 23 P.3d at 1002–03. The Oregon Court of Appeals held that menacing is not a lesser included offense because Robbery II(a) does not require specific intent to cause fear. *Id.* at 1003. The court reasoned that making the victim believe that the defendant is armed with a dangerous weapon "does not *necessarily*" require proof that "the defendant also intends to create in the mind of the victim the particular mental state of 'fear of imminent serious physical injury.'" *Id.* The court posited that a defendant who says "I have a gun, but I don't want you to be afraid. Just give me your money, and no one will harm you in any way" would be guilty of Robbery II(a) but not menacing. *Id.* Ankeny argues that if Oregon does not require proof of intent to frighten the victim, Robbery II(a) does not necessarily entail the "threatened use of physical force" under the ACCA.

*Lee* does not transform Robbery II(a) into a nonviolent crime. First, *Lee* holds at most that Robbery II(a)'s representation element does not require specific intent to frighten the victim. But the ACCA does not require specific intent: "knowledge, or general intent, remains a sufficient *mens rea* to serve as the basis for a crime of violence." *Werle*, 877 F.3d at 882. *Lee* itself suggests that defendants who intentionally communicate to their robbery victims that they are armed will know that most victims will feel fear. *Lee*, 23 P.3d at 1003 ("[M]any or most victims in such circumstances in fact will be afraid."). Second, *Lee* holds that Robbery II(a) does not *necessarily* require proof of intent to frighten, *id.*, but the

ACCA requires "outward expression or indication of an intention to inflict pain, harm or punishment." *Parnell*, 818 F.3d at 980. A defendant's intention to frighten the victim and a defendant's intention to communicate an intent to inflict pain, harm and punishment if the victim resists are not necessarily two sides of the same coin. *See Lee*, 23 P.3d at 1003.

Finally, Ankeny argues that we should apply the rule of lenity to construe Robbery II in his favor. The rule applies only "where there is a grievous ambiguity or uncertainty in the language or structure of the statute," *United States v. Wanland*, 830 F.3d 947, 954 (9th Cir. 2016) (quoting *United States v. Kahre*, 737 F.3d 554, 572 (9th Cir. 2013)), which we do not find here.

We therefore **AFFIRM.**